# Exhibit A

# MINTZ LEVIN

One Financial Center
Boston, MA 02111
617-542-6000
617-542-2241 fax
www.mintz.com

Andrew H. DeVoogd | 617 348 1611 | ahdevoogd@mintz.com



March 21, 2017

**VIA HAND DELIVERY & EDIS**

The Honorable Lisa R. Barton
Secretary to the Commission
U.S. International Trade Commission
500 E Street SW
Washington, D.C. 20436

Re: *Certain Thermoplastic-Encapsulated Electric Motors, Components Thereof, and Products and Vehicles Containing Same*
Inv. No 337-TA-__

Dear Secretary Barton:

I enclose for filing on behalf of Intellectual Ventures II LLC ("Intellectual Ventures") the following documents in support of Intellectual Ventures' request that the Commission commence an investigation pursuant to the provisions of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. §1337. Please note that Confidential Exhibits 29, 30, 108, 109, 111, 112, and 127-133 to the Complaint contain Confidential Business Information and pursuant to the Commission's Rules of Practice and Procedure, a request for confidential treatment of the information in those exhibits accompanies this filing. Accordingly, Intellectual Ventures submits the following:

1. One (1) original and eight (8) copies of Complainant's Verified Complaint and the Public Interest Statement (originals unbound); one (1) CD of the Non-Confidential Exhibits and one (1) CD of the Confidential Exhibits (Commission Rules 201.6(c), 210.4(f)(2) and 210.8 (a)(1)(i)) and 210.8(b));

2. Twenty-five (25) additional copies of the Complaint, the Public Interest Statement and twenty-five (25) CDs of the non-confidential and confidential exhibits (each set of exhibits on separate CDs), for service upon the following Respondents: Aisin Seiki Co., Ltd., Aisin Holdings of America, Inc., Aisin Technical Center of America, Inc., Aisin World Corporation of America,; Bayerische Motoren Werke AG; BMW of North America, LLC; BMW Manufacturing Co., LLC; Denso Corporation, Denso International America, Inc., Honda Motor Co., Ltd., Honda North America, Inc., American Honda Motor Co., Inc., Honda of America Mfg. Inc., Honda Manufacturing of Alabama, LLC, Honda R&D Americas, Inc.; Mitsuba Corporation; American Mitsuba Corporation; Nidec Corporation, Nidec Automotive Motor Americas, LLC; Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing, Indiana, Inc., and Toyota Motor Manufacturing, Kentucky, Inc. (Commission Rules 201.6(c), 210.4(f)(2), 210.8(a)(1)(i) and 201.8(b));

3. Two (2) additional copies of the Complaint for service upon the embassies of Germany and Japan (Commission Rules 210.8(a)(1)(iii) and 210.11(a));

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | LONDON | LOS ANGELES | NEW YORK | SAN DIEGO | SAN FRANCISCO | STAMFORD | WASHINGTON

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

Honorable Lisa R. Barton
March 21, 2017
Page 2

4.     One (1) certified copy of each of the following asserted United States Patents: U.S. Patent No. 7,154,200; U.S. Patent No. 7,067,944; U.S. Patent No. 7,067,952; U.S. Patent No. 7,683,509; and U.S. Patent No. 7,928,348, included with the Complaint as Exhibits 1, 6, 12, 18, and 23 (Commission Rule 210.12(a)(9)(i));

5.     One (1) certified copy and four (4) additional copies, on CDs, of the U.S. Patent and Trademark Office prosecution histories for each of the asserted United States Patents: U.S. Patent No. 7,154,200; U.S. Patent No. 7,067,944; U.S. Patent No. 7,067,952; U.S. Patent No. 7,683,509; and U.S. Patent No. 7,928,348, included with the Complaint as Appendices A, C, E, G, and I (Commission Rule 210.12(c)(1));

6.     One (1) certified copy of the Assignment Records for asserted United States Patents: U.S. Patent No. 7,154,200; U.S. Patent No. 7,067,944; U.S. Patent No. 7,067,952; U.S. Patent No. 7,683,509; and U.S. Patent No. 7,928,348, included with the Complaint as Exhibits 2-5, 7-11, 13-17, 19-22, 24-28, and 90 (Commission Rule 210.12(a)(9)(ii));

7.     Four (4) copies, on CD, of the certified patent and applicable pages of each technical reference mentioned in the prosecution histories for each of the asserted United States Patents: U.S. Patent No. 7,154,200; U.S. Patent No. 7,067,944; U.S. Patent No. 7,067,952; U.S. Patent No. 7,683,509; and U.S. Patent No. 7,928,348; included with the Complaint as Appendices B, D, F, H, and J (Rule 210.12(c)(2));

8.     A letter and certification pursuant to Commission Rules 201.6(b) and 210.5(d) requesting confidential treatment of information appearing in Confidential Exhibits 29, 30, 108, 109, 111, 112, and 127-133 to Intellectual Ventures' verified Complaint.

Respectfully submitted,

Andrew H. DeVoogd
Counsel for Complainant
Intellectual Ventures II LLC

# MINTZ LEVIN

One Financial Center
Boston, MA  02111
617-542-6000
617-542-2241 fax
www.mintz.com

Andrew H. DeVoogd | 617 348 1611 | ahdevoogd@mintz.com

March 21, 2017

**VIA HAND DELIVERY & EDIS**

The Honorable Lisa R. Barton
Secretary to the Commission
U.S. International Trade Commission
500 E Street SW
Washington, D.C.  20436

Re:   *Certain Thermoplastic-Encapsulated Electric Motors, Components Thereof, and*
*Products and Vehicles Containing Same*
Inv. No 337-TA-__

Dear Secretary Barton:

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. represents Complainant Intellectual Ventures II LLC ("Intellectual Ventures") in the matter of the above referenced Complaint, which is being filed pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U. S. C. § 1337.

Pursuant to Commission Rules 201.6(b) and 210.5(d), Intellectual Ventures respectfully requests confidential treatment of the information contained in Confidential Exhibits 29, 30, 108, 109, 111, 112, and 127-133.  The information contained in Confidential Exhibits 29, 30, 108, 109, 111, 112, and 127-133 qualifies as confidential information pursuant to 19 C.F.R. § 201.6 in that it discloses proprietary commercial information, proprietary commercial relationships, and/or proprietary business information that is not otherwise publicly available, and because the disclosure of such information would cause substantial harm to Intellectual Ventures, and would also impair the Commission's ability in the future to obtain such types of information in performance of its statutory function.

I certify that the proprietary confidential commercial information, proprietary commercial relationships, and/ or proprietary business information present in these exhibits is not reasonably available to the public, and thus warrants confidential treatment.

Respectfully submitted,

Andrew H. DeVoogd
Counsel for Complainant
Intellectual Ventures II LLC

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | LONDON | LOS ANGELES | NEW YORK | SAN DIEGO | SAN FRANCISCO | STAMFORD | WASHINGTON

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON DC**

---

In the Matter of

CERTAIN THERMOPLASTIC-
ENCAPSULATED ELECTRIC MOTORS,        **Investigation No. 337-TA-____**
COMPONENTS THEREOF, AND PRODUCTS
AND VEHICLES CONTAINING SAME

---

## COMPLAINANT INTELLECTUAL VENTURES II LLC'S
## STATEMENT ON THE PUBLIC INTEREST

Complainant Intellectual Ventures II LLC ("Intellectual Ventures" or

"Complainant") hereby submits this Statement Regarding the Public Interest in compliance

with 19 C.F.R. § 210.8(b). Intellectual Ventures submits that the issuance of the relief

requested in this Investigation, including a limited exclusion order and cease and desist

orders, will have no meaningful impact on the: public health, safety, or welfare in the United

States, competitive conditions in the United States economy, the production of like or

directly competitive articles in the United States, or United States consumers. Intellectual

Ventures also submits that because the proposed remedies will have no meaningful impact

on the public health, safety, or welfare there is no need to delegate the public interest to the

Administrative Law Judge and in fact, in this case, delegation would be contrary to the

public interest.

Complainant is seeking a permanent limited exclusion order specifically directed to the

proposed Respondents that will exclude from entry into the United States certain

thermoplastic-encapsulated electric motors and products incorporating the same that infringe

U.S. Patent Nos. 7,154,200; 7,928,348; 7,683,509; 7,067,944; 7,067,952 (collectively, the

"Asserted Patents"). Respondents' proposed Accused Products are automotive water pumps,

coolant pumps, power steering units, actuators, drive motors, and transaxle assemblies, and

1

vehicles containing the same. The accused vehicles represent only a small segment of the market for new automobiles in the United States that can be easily replaced by vehicles manufactured by non-Respondents and licensed entities.

Intellectual Ventures also seeks permanent cease and desist orders, pursuant to Section 337(f), halting the importation, sale, offer for sale, using, marketing, and/or advertising of the components and products incorporating certain thermoplastic-encapsulated electric motors that infringe the Asserted Patents by the domestic Respondents and related entities.

No compelling public interest will prevent the Commission from issuing the requested remedial orders. First, as an initial matter, the Accused Products are not medical, used by first responders or otherwise of the type that implicate the public interest. Second, the proposed remedies do not implicate any particular public health, safety, or welfare concerns because they only impact a very limited sector of the market, and even in that sector there are ample substitutes available to consumers, including products produced by domestic licensees Ford Motor Company ("Ford"), and Encap Technologies, Inc. ("Encap"). The entities authorized to practice the patents are leaders in their respective industries and, together with the many un-accused market participants, are able to replace excluded products. For example, Ford is a manufacturing giant able to meet the demand for vehicles containing the accused components. Additionally, there are many non-accused suppliers of thermoplastic-encapsulated electric motors, and vehicles containing same, that are also able to readily meet demand. As such, there will be no shortage of products to replace the Accused Products, particularly as only a small sector of the relevant market will be impacted by the requested remedial orders. Consequently, consumers will not face any shortage of like or directly competitive products in the United States.

Second, the Accused Products in this Investigation that are vehicles represent a small, replaceable subset of the U.S. automotive market. The automotive Respondents, BMW,

Honda, and Toyota, together represent a small segment of the new automobile market in the United States. Moreover, the implicated vehicles for each of the automotive Respondents represent a limited subset of each such Respondent's vehicle offerings. In other words, the accused vehicles are a subset of a small subset of the United States automobile market. Therefore, the requested remedial orders will cause no market disruption because (1) the accused vehicles represent a small segment of the market, and (2) the automobile manufacturers that incorporate the Accused Products into their automobiles can replace the infringing, unlicensed components with products that are either licensed to practice the patents or are not accused in this Investigation.

## I.  Use of articles potentially subject to remedial orders in the United States.

Respondents' Accused Products potentially subject to remedial orders in the proposed Investigation are automotive water pumps, coolant pumps, power steering motors, actuators, drive motors, and transaxle assemblies, and vehicles containing the same. Such devices are used in the operation of vehicle engines, transmissions, and power steering units. To the best of the Complainant's knowledge, the Accused Products are not particularly used by the health and public safety sectors, or first responders.

## II.  There are no public health, safety, or welfare concerns in the United States relating to the potential remedial orders.

The issuance of the requested remedial orders will not adversely affect the public health, safety, or welfare in the United States. No health or safety related features are unique to Respondents' infringing products. Additionally, the automotive Respondents, BMW, Honda, and Toyota, together represent a small segment of new automobiles sold in the United States and the infringing components can readily be replaced by licensed or un-accused products. Additionally, the accused vehicles represent only a limited subset of the vehicle offerings of the automotive Respondents. Furthermore, as discussed above, there are

3

numerous entities in the automotive space not at issue here and that will be unaffected by the

requested relief, including those that are licensed to practice the Asserted Patents, that can

meet the demand for products excluded under the requested remedial orders.

### III. No special public interest issues will be affected by the requested relief.

This Investigation does not present any special public interest issues that would

prevent the Commission's issuance of the requested exclusion and cease and desist orders, or

that would require discovery and trial on this issue. The requested relief would not, for

example, exclude pharmaceuticals, medical devices, or public safety equipment. Further,

because the accused vehicle models of the automotive Respondents represent a small segment

of the United States automotive market, the requested relief will not cause a product shortage.

Accordingly, public interest fact-finding should not be delegated to the Administrative Law

Judge. Delegation of the public interest triggers extensive and burdensome fact discovery

which, in this case, would waste the resources of the ALJ, Commission, and Staff, and would

also cause the parties to unnecessarily spend time, resources, and money on this issue.

### IV. Non-Respondents and entities licensed to practice the Asserted Patents make articles that can replace the Accused Products, and have the capacity to replace the Accused Products in a commercially reasonable time.

There exists a large volume of automobiles and automotive water pumps, coolant

pumps, power steering motors, actuators, drive motors, and transaxle assemblies produced

by non-Respondents and licensed entities that are more than capable of fulfilling consumer

demand and supplying substitutes for Respondents' excluded products. Therefore, the

requested remedial orders would not adversely impact the public.

Moreover, the Accused Products only represent a small portion of the U.S. automotive

market. There are many major United States-based automobile retailers, including Ford,

General Motors, and Chrysler, that are not proposed Respondents, and could easily provide

4

replacement articles for the automobiles containing Accused Products, and in the process likely create numerous American jobs.

## V. The requested remedial orders will not have a negative impact on United States consumers.

If Respondents' infringing products are excluded, consumers will not be deprived of new automobiles with state-of-the-art technology. There are ample replacement articles of like or directly competitive products such that there would be no negative impact on United States consumers. For every accused automobile, there are many like products available on the U.S. market including those manufactured by, for example, Ford, Nissan, Mercedes, General Motors, Chrysler, Subaru, Volvo, Mitsubishi, Mazda, Audi, or Volkswagen.

## VI. Conclusion

A permanent limited exclusion order and a cease and desist order in this Investigation against the proposed Respondents' Accused Products will not meaningfully affect the public health, safety, or welfare in the United States, competitive conditions in the United States economy, the production of like or competitive articles in the United States, and the availability of products to consumers. Because there are numerous sources of like and competitive licensed products, no U.S. consumer will be negatively affected by the requested relief.

This Investigation does not present any special issues of public interest that affect the Commission's issuance of the requested relief, or that necessitate discovery and trial on this issue by the ALJ. Accordingly, the Commission should not direct the ALJ to take unnecessary evidence on the public interest.

Dated:  March 21, 2017

Respectfully submitted,

James M. Wodarski
Michael T. Renaud
Andrew H. DeVoogd
Nicholas W. Armington
Serge Subach
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO P.C.
One Financial Center
Boston, MA 02111
Tel: 617-542-6000
Fax: 617-542-2241
www.mintz.com


Brad M. Scheller
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO P.C.
666 Third Avenue
New York, NY 10017
Tel: 212-935-3000
Fax: 212-983-3115
www.mintz.com

Aarti Shah
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO P.C.
701 Pennsylvania Avenue N.W.
Suite 900
Washington, DC 20004
Tel: 202-434-7300
Fax: 202-434-7400
www.mintz.com

*Counsel for Complainant*
*Intellectual Ventures II LLC*

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, DC

In the Matter of

CERTAIN THERMOPLASTIC-
ENCAPSULATED ELECTRIC MOTORS,
COMPONENTS THEREOF, AND
PRODUCTS AND VEHICLES
CONTAINING SAME

Investigation No. 337-TA-___

# VERIFIED COMPLAINT UNDER SECTION 337
## OF THE TARIFF ACT OF 1930, AS AMENDED

**COMPLAINANTS:**

**Intellectual Ventures II LLC**
3150 139th Avenue SE
Building 4
Bellevue, WA 98005
Telephone: 425-467-2300

**COUNSEL FOR COMPLAINANT**

James M. Wodarski
Michael T. Renaud
Andrew H. DeVoogd
Nicholas W. Armington
Serge Subach
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
Tel: 617-542-6000
Fax: 617-542-2241
www.mintz.com

Brad M. Scheller
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO PC
666 Third Avenue
New York, NY 10017
Tel: 212-935-3000
Fax: 212-983-3115
www.mintz.com

**PROPOSED RESPONDENTS:**

Aisin Seiki Co., Ltd.
2-1, Asahimachi
Kariya 448-0032
Aichi, Japan
Telephone: +81-566248441

Aisin Holdings of America, Inc.
1665 E 4th Street Road
Seymour, IN 47274
Telephone: 812-524-8144

Aisin Technical Center of America, Inc.
15300 Centennial Drive
Northville, MI 48168
Telephone: 734-453-5551

Aisin World Corporation of America
15300 Centennial Drive
Northville, MI 48168
Telephone: 734-453-5551

Bayerische Motoren Werke AG
Petuelring 130
D-80788, Munich, Germany
Telephone: +49-89-382-0

BMW of North America, LLC
300 Chestnut Ridge Rd.
Woodcliff Lake, NJ 07677

Aarti Shah
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO PC
701 Pennsylvania Avenue NW
Suite 900
Washington, DC 20004
Tel: 202-434-7300
Fax: 202-434-7400

Telephone: 201-307-4000

BMW Manufacturing Co., LLC
1400 Hwy. 101 S.
Greer, SC 29651-6731
Telephone: 864-989-6000

Denso Corporation
1-1, Showacho,
Kariya 448-0029
Aichi, Japan
Telephone: 852-2492-3433

Denso International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: 760-597-7400

Honda Motor Co., Ltd.
1-1, 2-chome, Minami-Aoyama, Minato-ku
Tokyo 107-8556, Japan
Telephone: +81-(0)3-3423-1111

Honda North America, Inc.
700 Van Ness Avenue
Torrance, CA 90501
Telephone: 310-783-2000

American Honda Motor Co., Inc.
1919 Torrance Blvd.
Torrance, CA 90501
Telephone: 310-783-2000

Honda of America Mfg., Inc.
24000 Honda Pkwy.
Marysville, OH 43040
Telephone: 937-642-5000

Honda Manufacturing of Alabama, LLC
1800 Honda Drive
Lincoln, AL 35096
Telephone: 205-355-5000

Honda R&D Americas, Inc.
1900 Harpers Way
Torrance, CA 90501

Telephone: 310-781-5500

Mitsuba Corporation
1-2681, Hirosawacho
Kiryu 376-0013
Gunma, Japan
Telephone: +81-277520111

American Mitsuba Corporation
2945 Three Leaves Drive
Mount Pleasant, MI 48858
Telephone: 989-773-0377

Nidec Corporation
338, Tonoshirocho
Kuze, Minami-Ku
Kyoto, Japan
Telephone: +81-75-922-1111

Nidec Automotive Motor Americas, LLC
1800 Opdyke Court
Auburn Hills, MI 48326
Telephone: 248-340-9977

Toyota Motor Corporation
1 Toyota-cho
Toyota City, Aichi Prefecture 471-8571, Japan
Telephone: +81-5-6528-2121

Toyota Motor North America, Inc.
601 Lexington Ave., 49th Floor
New York, NY 10022
Telephone: 212-510-4800

Toyota Motor Sales, U.S.A., Inc.
19001 S. Western Avenue
Torrance, CA 90501
Telephone: 301-468-4000

Toyota Motor Engineering & Manufacturing
North America, Inc.
25 Atlantic Avenue
Erlanger, KY 41018
Telephone: 859-746-4000

Toyota Motor Manufacturing, Indiana, Inc.
4000 Tulip Tree Drive
Princeton, IN 47670
Telephone: 812-387-2000

Toyota Motor Manufacturing, Kentucky, Inc.
1001 Cherry Blossom Way
Georgetown, KY 40324
Telephone: 502-868-2000

# TABLE OF CONTENTS

I.      APPENDICES ..................................................................................................... xiv
II.     INTRODUCTION ................................................................................................... 1
III.    THE PARTIES ........................................................................................................ 3
        A.      The Complainant.......................................................................................... 3
        B.      The Proposed Respondents .......................................................................... 4
                1.      Proposed Respondent Aisin ............................................................. 4
                2.      Proposed Respondent BMW ............................................................ 5
                3.      Proposed Respondent Denso............................................................ 5
                4.      Proposed Respondent Honda ........................................................... 6
                5.      Proposed Respondent Mitsuba......................................................... 7
                6.      Proposed Respondent Nidec ............................................................ 7
                7.      Proposed Respondent Toyota .......................................................... 8
IV.     THE ASSERTED '200 PATENT .......................................................................... 9
        A.      Ownership and Asserted Claims of the '200 Patent .................................... 9
        B.      Licenses Relating to the '200 Patent.......................................................... 10
        C.      Foreign Counterparts to the '200 Patent .................................................... 10
V.      THE ASSERTED '348 PATENT ........................................................................ 10
        A.      Ownership and Asserted Claims of the '348 Patent .................................. 10
        B.      Licenses Relating to the '348 Patent.......................................................... 11
        C.      Foreign Counterparts to the '348 Patent .................................................... 11
VI.     THE ASSERTED '509 PATENT ........................................................................ 11
        A.      Ownership and Asserted Claims of the '509 Patent .................................. 11
        B.      Licenses Relating to the '509 Patent.......................................................... 12
        C.      Foreign Counterparts to the '509 Patent .................................................... 12
VII.    THE ASSERTED '944 PATENT ........................................................................ 12
        A.      Ownership and Asserted Claims of the '944 Patent .................................. 12
        B.      Licenses Relating to the '944 Patent........................................................... 13
        C.      Foreign Counterparts to the '944 Patent .................................................... 13
VIII.   THE ASSERTED '952 PATENT ........................................................................ 14
        A.      Ownership and Asserted Claims of the '952 Patent .................................. 14
        B.      Licenses Relating to the '952 Patent.......................................................... 15
        C.      Foreign Counterparts to the '952 Patent .................................................... 15
IX.     NON-TECHNICAL DESCRIPTION OF THE PATENTED TECHNOLOGY ............. 15
        A.      The "Encapsulation Patents"...................................................................... 16
                1.      The '200 Patent ............................................................................. 16
                2.      The '944 Patent ............................................................................. 16
        B.      The "Fluid Channel Patents" ..................................................................... 16
                1.      The '348 Patent and '509 Patent .................................................. 16
        C.      The "Segmented Stator Patent" ................................................................. 17
                1.      The '952 Patent ............................................................................. 17
X.      UNFAIR ACTS OF PROPOSED RESPONDENTS – PATENT
        INFRINGEMENT.................................................................................................. 17
        A.      BMW........................................................................................................... 18
                1.      Representative Involved Article .................................................... 18
                2.      Infringement of the '200 Patent ................................................... 18

|       |      | 3. | Infringement of the '944 Patent | 19 |
|       |      | 4. | Specific Instance of Sale and Importation | 19 |
|       | B.   | Aisin | | 20 |
|       |      | 1. | Representative Involved Article | 20 |
|       |      | 2. | Infringement of the '200 Patent | 21 |
|       |      | 3. | Infringement of the '348 Patent | 22 |
|       |      | 4. | Infringement of the '509 Patent | 23 |
|       |      | 5. | Infringement of the '944 Patent | 24 |
|       |      | 6. | Specific Instance of Sale and Importation | 25 |
|       | C.   | Mitsuba | | 27 |
|       |      | 1. | Representative Involved Article | 27 |
|       |      | 2. | Infringement of the '952 Patent | 28 |
|       |      | 3. | Specific Instance of Sale and Importation | 28 |
|       | D.   | Honda | | 29 |
|       |      | 1. | Representative Involved Article | 29 |
|       |      | 2. | Infringement of the '200 Patent | 31 |
|       |      | 3. | Infringement of the '348 Patent | 31 |
|       |      | 4. | Infringement of the '509 Patent | 31 |
|       |      | 5. | Infringement of the '944 Patent | 32 |
|       |      | 6. | Infringement of the '952 Patent | 32 |
|       |      | 7. | Specific Instance of Sale and Importation | 33 |
|       | E.   | Toyota | | 36 |
|       |      | 1. | Representative Involved Article | 36 |
|       |      | 2. | Infringement of the '200 Patent | 38 |
|       |      | 3. | Infringement of the '348 Patent | 38 |
|       |      | 4. | Infringement of the '509 Patent | 39 |
|       |      | 5. | Infringement of the '944 Patent | 40 |
|       |      | 6. | Infringement of the '952 Patent | 41 |
|       |      | 7. | Specific Instance of Sale and Importation | 41 |
|       | F.   | Nidec | | 45 |
|       |      | 1. | Representative Involved Article | 45 |
|       |      | 2. | Infringement of the '952 Patent | 46 |
|       |      | 3. | Specific Instance of Sale and Importation | 46 |
|       | G.   | Denso | | 47 |
|       |      | 1. | Representative Involved Article | 47 |
|       |      | 2. | Infringement of the '952 Patent | 48 |
|       |      | 3. | Specific Instance of Sale and Importation | 48 |
| XI.   | HARMONIZED TARIFF SCHEDULE INFORMATION | | | 49 |
| XII.  | RELATED LITIGATION | | | 50 |
| XIII. | DOMESTIC INDUSTRY RELATING TO THE ASSERTED PATENTS | | | 50 |
|       | A.   | Encap Technologies, Inc. & Intec Group, Inc. | | 51 |
|       | B.   | Ford Motor Company | | 53 |
|       |      | 1. | Ford F-150 | 55 |
| XIV.  | RELIEF REQUESTED | | | 57 |

**EXHIBITS**

1       Certified Copy of United States Patent No. 7,154,200

2.      Certified Copy of the Assignment Record at Reel-Frame No. 018524-0001 for United
        States Patent No. 7,154,200

3.      Certified Copy of the Assignment Record at Reel-Frame No. 018524-0039 for United
        States Patent No. 7,154,200

4.      Certified Copy of the Assignment Record at Reel-Frame No. 018524-0379 for United
        States Patent No. 7,154,200

5.      Certified Copy of the Assignment Record at Reel-Frame No. 018524-08141 for United
        States Patent No. 7,154,200

6.      Certified Copy of United States Patent No. 7,928,348

7.      Certified Copy of the Assignment Record at Reel-Frame No. 018118-0978 for United
        States Patent No. 7,928,348

8.      Certified Copy of the Assignment Record at Reel-Frame No. 029006-0372 for United
        States Patent No. 7,928,348

9.      Certified Copy of the Assignment Record at Reel-Frame No. 029228-0379 for United
        States Patent No. 7,928,348

10.     Certified Copy of the Assignment Record at Reel-Frame No. 029549-0649 for United
        States Patent No. 7,928,348

11.     Certified Copy of the Assignment Record at Reel-Frame No. 037482-0814 for United
        States Patent No. 7,928,348

12.     Certified Copy of United States Patent No. 7,683,509

13.     Certified Copy of the Assignment Record at Reel-Frame No. 018080-0178 for United
        States Patent No. 7,683,509

14.     Certified Copy of the Assignment Record at Reel-Frame No. 029006-0431 for United
        States Patent No. 7,683,509

15.     Certified Copy of the Assignment Record at Reel-Frame No. 029228-0379 for United
        States Patent No. 7,683,509

16.     Certified Copy of the Assignment Record at Reel-Frame No. 029549-0684 for United
        States Patent No. 7,683,509

17.     Certified Copy of the Assignment Record at Reel-Frame No. 037482-0814 for United
        States Patent No. 7,683,509

18.     Certified Copy of United States Patent No. 7,067,944

19. Certified Copy of the Assignment Record at Reel-Frame No. 018524-001 for United States Patent No. 7,067,944

20. Certified Copy of the Assignment Record at Reel-Frame No. 018524-0039 for United States Patent No. 7,067,944

21. Certified Copy of the Assignment Record at Reel-Frame No. 029228-0379 for United States Patent No. 7,067,944

22. Certified Copy of the Assignment Record at Reel-Frame No. 037482-0814 for United States Patent No. 7,067,944

23. Certified Copy of United States Patent No. 7,067,952

24. Certified Copy of the Assignment Record at Reel-Frame No. 014596-0432 for United States Patent No. 7,067,952

25. Certified Copy of the Assignment Record at Reel-Frame No. 018524-0001 for United States Patent No. 7,067,952

26. Certified Copy of the Assignment Record at Reel-Frame No. 018524-0039 for United States Patent No. 7,067,952

27. Certified Copy of the Assignment Record at Reel-Frame No. 029228-0379 for United States Patent No. 7,067,952

28. Certified Copy of the Assignment Record at Reel-Frame No. 037482-0814 for United States Patent No. 7,067,952

29. Declaration of Intellectual Ventures

30. Declaration of Encap

31. Claim Chart Comparing U.S. Patent No. 7,154,200 to BMW Turbo Actuator

32. Claim Chart Comparing U.S. Patent No. 7,067,944 to BMW Turbo Actuator (Claim 3)

33. Claim Chart Comparing U.S. Patent No. 7,067,944 to BMW Turbo Actuator

34. Receipt -bmwpartsworldwide.com - TURBOCHARGER & COMPONENTS for 2016 BMW 228i

35. Herb Chambers Website - New BMW Vehicles for Sale _ BMW Dealership near Newton, MA

36. Website: https://www.carfax.com/guides/buying-used/what-to-consider/vin-decoding

37. Website: http://www.bmwusa.com/Standard/Content/CompanyInformation

38. Website: https://www.bmwusfactory.com/manufacturing/production-overview/

39.   Claim Chart Comparing U.S. Patent No. 7,154,200 to Toyota Aisin Large Pump
      (161A0-29015)

40.   Claim Chart Comparing U.S. Patent No. 7,154,200 to  Toyota Aisin Large Pump
      (161A0-39025)

41.   Claim Chart Comparing U.S. Patent No. 7,154,200 to  Toyota Aisin Large Pump
      (161A0-39035)

42.   Claim Chart Comparing U.S. Patent No. 7,154,200 to Toyota Aisin Small Pump
      (G9040-47040)

43.   Claim Chart Comparing U.S. Patent No. 7,154,200 to  Toyota Aisin Small Pump
      (G9040-52010)

44.   Claim Chart Comparing U.S. Patent No. 7,154,200 to  Toyota Aisin Small Pump
      (G9040-33030)

45.   Claim Chart Comparing U.S. Patent No. 7,154,200 to Honda Aisin Coolant Pump
      (19200-5K0-A01)

46.   Claim Chart Comparing U.S. Patent No. 7,154,200 to Honda Small Pump
      (061J0-5K1-A00)

47.   Claim Chart Comparing U.S. Patent No. 7,928,348 to Toyota Aisin Small Pump
      (G9040-52010)

48.   Claim Chart Comparing U.S. Patent No. 7,928,348 to Toyota Aisin Small Pump
      (G9040-33030)

49.   Claim Chart Comparing U.S. Patent No. 7,928,348 to  Toyota Aisin Small Pump
      (G9040-47040)

50.   Claim Chart Comparing U.S. Patent No. 7,928,348 to Honda Small Aisin Pump
      (061J0-5K1-A00)

51.   Claim Chart Comparing U.S. Patent No. 7,683,509 to Toyota Aisin Large Pump
      (161A0-29015)

52.   Claim Chart Comparing U.S. Patent No. 7,683,509 to Toyota Aisin Large Pump
      (161A0-39025)

53.   Claim Chart Comparing U.S. Patent No. 7,683,509 to Toyota Aisin Large Pump
      (161A0-39035)

54.   Claim Chart Comparing U.S. Patent No. 7,683,509 to Toyota Aisin Small Pump
      (G9040-52010)

55.     Claim Chart Comparing U.S. Patent No. 7,683,509 to Toyota Aisin Small Pump
        (G9040-33030)

56.     Claim Chart Comparing U.S. Patent No. 7,683,509 to Toyota Aisin Small Pump
        (G9040-47040)

57.     Claim Chart Comparing U.S. Patent No. 7,683,509 to Honda Large Pump
        (19200-5K0-A01)

58.     Claim Chart Comparing U.S. Patent No. 7,683,509 to Honda Small Pump
        (061J0-5K1-A00)

59.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 3 to Toyota Aisin Large Pump
        (29015)

60.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 9, 11 to Toyota Aisin Large
        Pump (29015)

61.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 3 to Toyota Aisin Large Pump
        (39025)

62.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 9, 11 to Toyota Aisin Large
        Pump (39025)

63.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 3 to Toyota Aisin Large Pump
        (39035)

64.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 9, 11 to Toyota Aisin Large
        Pump (39035)

65.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 3 to Toyota Aisin Small Pump
        (G9040-52010)

66.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 3 to Toyota Aisin Small Pump
        (G9040-33030)

67.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 3 to Toyota Aisin Small Pump
        (G9040-47040)

68.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 3 to Honda Coolant Pump
        (19200-5K0-A01)

69.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 9, 11 to Honda Coolant Pump
        (19200-5K0-A01)

70.     Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 3 to Honda Small Pump
        (061J0-5K1-A00)

71.    Website: http://www.aisinworld.com/locations/north-america/administration-sales-companies/aisin-holdings-of-america-inc-details/

72.    Website: http://www.aisinworld.com/locations/north-america/administration-sales-companies/

73.    Website: http://www.aisin.com/profile/global/north_america/

74.    Website: http://www.aisintca.com/index.php?com=ics_content&content_id=2

75.    Website: http://www.aisintca.com/index.php?com=ics_content&content_id=18

76.    Claim Chart Comparing U.S. Patent No. 7,067,952, to Mitsuba EPS (53602-TV0-E01)

77.    Claim Chart Comparing U.S. Patent No. 7,067,952, to Mitsuba EPS (53281-TG7-A20)

78.    Claim Chart Comparing U.S. Patent No. 7,067,952, to Mitsuba EPS (53602-SZT-G01)

79.    Website: http://www.americanmitsuba.com/about.html

80.    Website: http://www.mitsuba.co.jp/english/group-oversea/american-mitsuba

81.    Claim Chart Comparing U.S. Patent No. 7,067,952, to Acura RLX (53600-TY2-A61)

82.    Receipt from Bob Rohman's Schaumburg Honda

83.    Honda A20 and G01 Receipts from Bob Rohman's Schaumburg Honda

84.    Prime Honda - 2016 Honda CR-Z EX

85.    Website: https://www.carfax.com/guides/buying-used/what-to-consider/vin-decoding

86.    Receipt from Muller's Woodfield Acura  (53600-TY2-A61)

87.    Website: Clinton Acura- New 2016 Acura RLX with Advance Package

88.    Receipt from Schaumburg Honda (19200-5K0-A01 Pump)

89.    Receipt from Schaumburg Honda (061JO-5K1-A00 Pump)

90.    Certified Copy of the Assignment Record at Reel-Frame No. 041115-0818

91.    2016 Honda Digital Fact Book (https://hondainamerica.com/wp-content/uploads/DFB_2016_US_0517.pdf)

92.    Claim Chart Comparing U.S. Patent No. 7,067,952 to Toyota-Lexus-Denso (89650-33640)

93.    Claim Chart Comparing U.S. Patent No. 7,067,944 to Toyota Hybrid Transaxle Assembly

94.    Receipt from Woodfield Lexus (4520A-33101)

95.     Website: Lexus of Watertown (http://www.lexusofwatertown.com)

96.     Receipt from Olathe Toyota (161A0-39035)

97.     Toyota of Nashua – Prius Four Listings

98.     Receipt from Olathe Toyota (161A0-29015)

99.     Website: Toyota of Portsmouth (http://www.toyotaofportsmouth.com)

100.    Website: Expressway Toyota Website (http://www.expresswaytoyota.com)

101.    Receipt from Schaumburg Toyota Transaxle

102.    Website: Colonial Toyota

103.    Website: Toyota Motor North America Corp Parent

104.    Website: Nidec Automotive Motor Americas

105.    Website: Nidec Corporation

106.    Website: Denso North America

107.    Website: DENSO International America Inc.

108.    Encap Patent Purchase Agreement

109.    Ford License Agreement

110.    Website: Encap Examples

111.    Summary of Patent Reads on Encap Domestic Industry Products

112.    Domestic Industry Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 9, 11 to Domestic Industry Product

113.    Ford Motor Company Timeline

114.    Ford 2015 Annual Report

115.    Ford to invest $9 billion -- in U.S. Plants This Time

116.    Ford Invests $1.6 Billion in U.S

117.    Ford F-150 review - America's Best-Selling Vehicle Still Delivers - LA Times

118.    Ford Cleveland Engine Plant

119.    Ford Cleveland Engine Plant Gets $145 Million Upgrade, Creates 150 Jobs for New EcoBoost Engine Production _ Ford Media Center

120.    Ford Engine Plant – Cleveland Historical

121.   Ford F-150 at Livonia Transmission Plant (Forbes)

122.   Ford Livonia Transmission Plant

123.   Ford Invests $1.6 Billion in U.S. Plants, Creates 650 Hourly Jobs in Michigan and Ohio

124.   Ford Dearborn Truck Plant

125.   How Ford Will Spend $9B on Plants, Secure 8,500 jobs – Detroit Free Press

126.   Ford Kansas City Assembly Plant

127.   Domestic Industry Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 9, 11 to Domestic Industry Product

128.   Domestic Industry Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 9, 11 to Domestic Industry Product

129.   Domestic Industry Claim Chart Comparing U.S. Patent No. 7,154,200 to Domestic Industry Product

130.   Domestic Industry Claim Chart Comparing U.S. Patent No. 7,928,348 to Domestic Industry Product

131.   Domestic Industry Claim Chart Comparing U.S. Patent No. 7,683,509 to Domestic Industry Product

132.   Domestic Industry Claim Chart Comparing U.S. Patent No. 7,067,944, Claim 9, 11 to Domestic Industry Product

133.   Domestic Industry Claim Chart Comparing U.S. Patent No. 7,067,952 to Domestic Industry Product

## I.  APPENDICES

A.  One certified and three additional copies of the United States Patent and Trademark Office prosecution history for the United States Patent No. 7,154,200

B.  One certified copy of United States Patent No. 7,154,200 and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history of the '200 Patent.

C.  One certified and three additional copies of the United States Patent and Trademark Office prosecution history for the United States Patent No. 7,928,348

D.  One certified copy of United States Patent No. 7,928,348 and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history of the '348 Patent.

E.  One certified and three additional copies of the United States Patent and Trademark Office prosecution history for the United States Patent No. 7,683,509

F.  One certified copy of United States Patent No. 7,683,509 and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history of the '509 Patent.

G.  One certified and three additional copies of the United States Patent and Trademark Office prosecution history for the United States Patent No. 7,067,944

H.  One certified copy of United States Patent No. 7,067,944 and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history of the '944 Patent.

## II.    INTRODUCTION

1.    This Complaint is filed by Complainant Intellectual Ventures II LLC ("Intellectual Ventures" or "Complainant") pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337").

2.    Complainant brings this action to remedy violations of Section 337 arising from the unlawful and unauthorized importation into the United States, the sale for importation into the United States, and/or the sale within the United States after importation, of certain thermoplastic-encapsulated electric motors, components thereof, and products and vehicles containing same (the "Accused Products") that infringe one or more claims of United States Patent Nos. 7,154,200; 7,067,944; 7,067,952; 7,683,509; and 7,928,348 (together, the "Asserted Patents"). These Accused Products include, without limitation, coolant pumps, water pumps, power steering motors, actuators, drive motors, transaxle assemblies, and other thermoplastic-encapsulated electric motors, and vehicles containing such components.

3.    The proposed Respondents are Aisin Seiki Co., Ltd.; Aisin Holdings of America, Inc.; Aisin Technical Center of America, Inc.; and Aisin World Corporation of America (together, "Aisin"); Bayerische Motoren Werke AG; BMW of North America, LLC; and BMW Manufacturing Co., LLC (together, "BMW"); Denso Corporation; and Denso International America, Inc. (together, "Denso"); Honda Motor Co., Ltd.; Honda North America, Inc.; American Honda Motor Co., Inc.; Honda of America Mfg., Inc.; Honda Manufacturing of Alabama, LLC; and Honda R&D Americas, Inc. (together, "Honda"); Mitsuba Corporation; and American Mitsuba Corporation (together, "Mitsuba"); Nidec Corporation; and Nidec Automotive Motor Americas, LLC (together, "Nidec"); Toyota Motor Corporation; Toyota Motor North America, Inc.; Toyota Motor Sales, U.S.A., Inc.; Toyota Motor Engineering & Manufacturing North America, Inc.; Toyota Motor Manufacturing, Indiana, Inc.; and Toyota

Motor Manufacturing, Kentucky, Inc. (together, "Toyota"). Collectively, all of these Proposed

Respondents are referred to herein as "Respondents."

4.      On information and belief, each of the Respondents imports into the United States, sells

for importation into the United States, and/or sells in the United States after importation Accused

Products that directly infringe the Asserted Patents.

5.      Complainant asserts that the Accused Products practice at least the following claims of

one or more Asserted Patents: [1]

| Patent | Asserted Claims |
| --- | --- |
| 7,154,200 | **1**, 2, 4, 5, 6, 7 |
| 7,928,348 | **24**, 25, 26, 27 |
| 7,683,509 | **1**, 2, **14** 15 |
| 7,067,944 | **3, 9, 11** |
| 7,067,952 | **10**, 12 |

6.      To remedy Respondents' continuing and unlawful violation of Section 337,

Complainant seeks as permanent relief a limited exclusion order pursuant to 19 U.S.C. § 1337(d)

barring from entry into the United States all Respondents' Accused Products that directly

infringe one or more of the claims of the Asserted Patents. Complainant also seeks cease and

desist orders pursuant to 19 U.S.C. § 1337(f), prohibiting each domestic Respondent from

engaging in the importation into the United States and/or sale within the United States after

importation of Accused Products that infringe one or more claims of the Asserted Patents.

7.      Further, Complainant requests that the Commission impose a bond upon Respondents'

importation of infringing Accused Products during the 60-day Presidential review period

pursuant to 19 U.S.C. § 1337(j) to prevent further injury to Complainant and its licensees'

domestic industry relating to each of the Asserted Patents.

---

[1] Independent claims in the chart of asserted claims in each patent are in **bold.**

8.     A domestic industry exists and is in the process of being established as the result of domestic activities related to products that practice the Asserted Patents. These activities include the current and anticipated future significant and substantial domestic investments of licensees Encap Technologies, Inc., and Ford Motor Company.

## III.    THE PARTIES

### A.     The Complainant

9.     Complainant Intellectual Ventures is a Delaware limited liability company, having its principal place of business at 3150 139th Ave. SE, Building 4, Bellevue, WA 98005. Confidential Exhibit 29 ("Intellectual Ventures Declaration") at ¶ 3.

10.    Complainant Intellectual Ventures is the sole owner by assignment of all right, title, and interest in each Asserted Patent. Intellectual Ventures Declaration at ¶ 5.

11.    One of Intellectual Ventures' domestic licensees is Encap Technologies, Inc. ("Encap"), located at 707 S. Vermont Street, Palatine, IL 60067. Encap is the predecessor-in-interest of each of the Asserted Patents, and has a non-exclusive license to practice each of the Asserted Patents. Intellectual Ventures Declaration at ¶ 8.

12.    Encap is an American company that innovates and designs electric motors, sensors, electronics, and latch systems using thermoplastic encapsulation. Encap's innovations include the technology claimed by the Asserted Patents. Encap's design work includes articles that practice the Asserted Patents, including articles that form the basis of Intellectual Ventures' domestic industry under Section 337. Encap's innovative processes and products power millions of automobiles, appliances, systems, and industrial tools. Encap was at the forefront of the encapsulated motor industry, and its technologies have become ubiquitous across many market segments, including the automotive segment. Encap has invested significant and substantial domestic resources researching, developing, testing, manufacturing, supporting, and maintaining

3

technically innovative and commercially successful products in the encapsulated motor space, including products that practice the Asserted Patents. Throughout its history, Encap has made substantial investments to research, develop, and manufacture high quality encapsulated motors using innovative injection molding. Confidential Exhibit 30 ("Encap Declaration") at ¶¶ 3-50. These thermoplastic encapsulated motors include electric motors within automobile oil pumps, water pumps, and servo motors that practice the Asserted Patents. *Id.*; Confidential Exhibits 112, 127-133. The Asserted Patents stem from the research and design of innovative proprietary technology developed by Encap.

### B.    The Proposed Respondents

13.    With regard to the proposed Respondents, Complainant alleges the following on information and belief:

#### 1.    Proposed Respondent Aisin

14.    **Aisin Seiki Co., Ltd.** is a corporation organized and existing under the laws of Japan, with its principal place of business at 2-1, Asahimachi, Kariya 448-0032, Aichi, Japan. **Aisin Holdings of America, Inc.** is an Indiana corporation headquartered at 1665 E 4th Street Road, Seymour, IN 47274. **Aisin Technical Center of America, Inc.** is a Michigan corporation headquartered at 15300 Centennial Drive, Northville, MI 48168. **Aisin World Corporation of America** is a Michigan corporation headquartered at 15300 Centennial Drive, Northville, MI 48168. Proposed Respondents Aisin Seiki Co., Ltd., Aisin Holdings of America, Inc., Aisin Technical Center of America, Inc., and Aisin World Corporation of America are referred to collectively as **"Aisin."**

15.    Aisin is in the business of designing, developing, manufacturing, importing into the United States, selling for importation into the United States, and selling in the United States after

4

importation a variety of Accused Products including, without limitation, automotive water pumps and coolant pumps.

### 2.    Proposed Respondent BMW

16.    **Bayerische Motoren Werke AG** is a corporation organized and existing under the laws of Germany, with its principal place of business at Petuelring 130, D-80788, Munich, Germany.  **BMW of North America, LLC** is a New Jersey limited liability company headquartered at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677.  **BMW Manufacturing Co., LLC** is a Delaware limited liability company headquartered at 1400 Hwy. 101 S., Greer, South Carolina 29651.  Proposed Respondents Bayerische Motoren Werke AG, BMW of North America, LLC, and BMW Manufacturing Co., LLC are referred to collectively as **"BMW."**

17.    BMW is in the business of designing, developing, manufacturing, importing into the United States, selling for importation into the United States, and selling in the United States after importation a variety of Accused Products that are sold under, without limitation, the BMW brand name.  These Accused Products include, without limitation, automotive actuators and drive motors, and vehicles containing such components.  BMW also provides services to support the importation into the United States, sale for importation into the United States, and sale in the United States after importation of Accused Products.  For example, BMW's operations encompass marketing, coordination of supply-chain logistics, interfacing with customers and distributors, repair, product definition, product integration, and after-sale services with respect to the Accused Products.

### 3.    Proposed Respondent Denso

18.    **Denso Corporation** is a corporation organized and existing under the laws of Japan, with its principal place of business at 1-1, Showacho, Kariya, Aichi, 448-0029, Japan.  **Denso**

**International America, Inc.** is a Michigan corporation headquartered at 24777 Denso Drive, Southfield, MI 48033. Proposed Respondents Denso Corporation and Denso International America, Inc. are referred to collectively as **"Denso."**

19.    Denso is in the business of designing, developing, manufacturing, importing into the United States, selling for importation into the United States, and selling in the United States after importation a variety of Accused Products including, without limitation, automotive power steering motors.

### 4.    Proposed Respondent Honda

20.    **Honda Motor Co., Ltd**. is a corporation organized and existing under the laws of Japan, with its principal place of business at 2-1-1 chome, Minami-Aoyama, Minato-Ku, Tokyo, 107-8556, Japan. **Honda North America, Inc**. is a California corporation headquartered at 700 Van Ness Avenue, Torrance, CA 90501. **American Honda Motor Co., Inc.** is a California corporation headquartered at 1919 Torrance Blvd, Torrance, CA 90501. **Honda of America Mfg. Inc**. is an Ohio corporation headquartered at 24000 Honda Pkwy., Marysville, OH 43040. **Honda Manufacturing of Alabama, LLC** is an Alabama Limited Liability Company headquartered at 1800 Honda Drive, Lincoln, AL 35096. **Honda R&D Americas, Inc**. is a California corporation headquartered at 1900 Harpers Way, Torrance, CA 90501. Proposed Respondents Honda Motor Co., Ltd., Honda North America, Inc., American Honda Motor Co., Inc., Honda of America Mfg. Inc., Honda Manufacturing of Alabama, LLC, and Honda R&D Americas, Inc. are referred to collectively as **"Honda."**

21.    Honda is in the business of designing, developing, manufacturing, importing into the United States, selling for importation into the United States, and selling in the United States after importation a variety of Accused Products that are sold under, without limitation, the Honda and Acura brand names. These Accused Products include, without limitation, automotive water

pumps, coolant pumps, and power steering motors, and vehicles containing such components. Honda also provides services to support the importation into the United States, sale for importation into the United States, and sale in the United States after importation of Accused Products. For example, Honda's operations encompass marketing, coordination of supply-chain logistics, interfacing with customers and distributors, repair, product definition, product integration, and after-sale services with respect to the Accused Products.

### 5.    Proposed Respondent Mitsuba

22.    **Mitsuba Corporation** is a corporation organized and existing under the laws of Japan, with its principal place of business at 1-2681, Hirosawacho, Kiryu 376-0013, Gunma, Japan. **American Mitsuba Corporation** is a Michigan corporation headquartered at 2945 Three Leaves Drive, Mount Pleasant, MI 48858. Proposed Respondents Mitsuba Corporation and American Mitsuba Corporation are referred to collectively as **"Mitsuba."**

23.    Mitsuba is in the business of designing, developing, manufacturing, importing into the United States, selling for importation into the United States, and selling in the United States after importation a variety of Accused Products including, without limitation, automotive power steering motors.

### 6.    Proposed Respondent Nidec

24.    **Nidec Corporation** is a corporation organized and existing under the laws of Japan, with its principal place of business at 338, Tonoshirocho, Kuze, Minami-Ku, Kyoto, Japan. **Nidec Automotive Motor Americas, LLC** is a Michigan limited liability company headquartered at 1800 Opdyke Court, Auburn Hills, MI 48326. Proposed Respondents Nidec Corporation and Nidec Automotive Motor Americas, LLC are referred to collectively as **"Nidec."**

25.    Nidec is in the business of designing, developing, manufacturing, importing into the United States, selling for importation into the United States, and selling in the United States after

importation a variety of Accused Products including, without limitation, automotive power steering motors.

### 7.    Proposed Respondent Toyota

26.    **Toyota Motor Corporation** is a corporation organized and existing under the laws of Japan, with its principal place of business at 1 Toyota-cho, Toyota City, Aichi Prefecture 471-8571, Japan. **Toyota Motor North America, Inc.** is a California corporation headquartered at 601 Lexington Ave, 49th Floor, New York, NY 10022. **Toyota Motor Sales, U.S.A., Inc.** is a California corporation headquartered at 19001 S. Western Ave. Torrance, CA 90501. **Toyota Motor Engineering & Manufacturing North America, Inc.** is a Kentucky corporation headquartered at 25 Atlantic Avenue, Erlanger, KY 41018. **Toyota Motor Manufacturing, Indiana, Inc.** is an Indiana corporation headquartered at 4000 Tulip Tree Drive, Princeton, IN 47670. **Toyota Motor Manufacturing, Kentucky, Inc.** is a Kentucky corporation headquartered at 1001 Cherry Blossom Way, Georgetown, KY 40324. Proposed Respondents Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing, Indiana, Inc., and Toyota Motor Manufacturing, Kentucky, Inc. are referred to collectively as **"Toyota."**

27.    Toyota is in the business of designing, developing, manufacturing, importing into the United States, selling for importation into the United States, and selling in the United States after importation a variety of Accused Products under, without limitation, the Toyota and Lexus brand names. These Accused Products include, without limitation, automotive water pumps, coolant pumps, and power steering motors, and vehicles containing such components. Toyota also provides services to support the importation into the United States, sale for importation into the United States, and sale in the United States after importation of Accused Products. For example,

8

Toyota's operations encompass marketing, coordination of supply-chain logistics, interfacing with customers and distributors, repair, product definition, product integration, and after-sale services with respect to the Accused Products.

## IV.   THE ASSERTED '200 PATENT

### A.   Ownership and Asserted Claims of the '200 Patent

28.    United States Patent No. 7,154,200 ("the '200 Patent") is entitled "Motor," and issued December 26, 2006 to inventor Griffith D. Neal. The '200 Patent issued from United States Patent Application No. 11/439,733 filed on May 23, 2006. The '200 Patent claims priority to United States provisional application serial number 60/146,446 filed on July 29, 1999.

29.    By way of assignment, Complainant Intellectual Ventures owns all rights, title, and interest to the '200 Patent. As required by Commission Rules 210.12(a)(9)(i)-(ii), certified copies of the '200 Patent and its assignment records are attached as Exhibits 1-5, and 90.

30.    In accordance with Commission Rules 210.12(c)(1)-(2), Appendix A to this Complaint includes one certified and three additional copies of the United States Patent and Trademark Office prosecution history for the '200 Patent. Appendix B includes a certified copy of the '200 Patent and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history of the '200 Patent.

31.    All maintenance fees for the '200 Patent have been timely paid, and there are no fees currently due. The next maintenance fee will not be due until December 26, 2018.

32.    The '200 Patent has 16 claims, with five independent claims (claims 1, 9, 11, 13, and 15), and 11 dependent claims. Complainant is asserting at least claims 1, 2, 4, 5, 6, and 7 of the '200 Patent (the "Asserted '200 Patent Claims") against Proposed Respondents Aisin, BMW, Honda, and Toyota.

### B.   Licenses Relating to the '200 Patent

33.   Certain licensees exist to the '200 Patent.  Pursuant to Commission Rule

210.12(a)(9)(iii), Confidential Exhibit 29, Intellectual Ventures Declaration at ¶8-9, sets forth

details regarding licensees to the '200 Patent.

### C.   Foreign Counterparts to the '200 Patent

34.   In accordance with Commission Rule 210.12(a)(9)(v), Complainant identifies below

the only known foreign counterparts to the '200 Patent.  Complainant is unaware of any foreign

counterparts other than those identified below.

| Country | Patent No. | Application No. | Title | Filed | Published | Status |
|---------|-----------|-----------------|-------|-------|-----------|--------|
| Australia | AU 2000062287 | AU 62287/00 PCT/US00/19870 | High speed spindle motor | Jul 19, 2000 | May 2, 2002 | Lapsed |
| Japan | JP 2001095213 | JP 2000-224177 PCT/US00/19870 | High-speed spindle motor | Jul 25, 2000 | Apr 4, 2001 | Withdrawn |

## V.   THE ASSERTED '348 PATENT

### A.   Ownership and Asserted Claims of the '348 Patent

35.   United States Patent No. 7,928,348 ("the '348 Patent") is entitled "Electromagnetic

Device With Integrated Fluid Flow Path," and issued April 19, 2011 to inventor Griffith D. Neal.

The '348 Patent issued from United States Patent Application No. 11/489,911 filed on July 19,

2006.

36.   By way of assignment, Complainant Intellectual Ventures owns all rights, title, and

interest to the '348 Patent.  As required by Commission Rules 210.12(a)(9)(i)-(ii), certified

copies of the '348 Patent and its assignment records are attached as Exhibits 6-11, and 90.

37.   In accordance with Commission Rules 210.12(c)(1)-(2), Appendix C to this Complaint

includes one certified and three additional copies of the United States Patent and Trademark

Office prosecution history for the '348 Patent.  Appendix D includes a certified copy of the '348

Patent and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history of the '348 Patent.

38.   All maintenance fees for the '348 Patent have been timely paid, and there are no fees currently due.  The next maintenance fee will not be due until April 19, 2023.

39.   The '348 Patent has 27 claims, with four independent claims (claims 1, 20, 21, and 24), and 23 dependent claims.  Complainant is asserting at least claims 24, 25, 26, and 27 of the '348 Patent (the "Asserted '348 Patent Claims") against Aisin, Honda, and Toyota.

### B.   Licenses Relating to the '348 Patent

40.   Certain licensees exist to the '348 Patent.  Pursuant to Commission Rule 210.12(a)(9)(iii), Confidential Exhibit 29, Intellectual Ventures Declaration Decl. at ¶¶8-9, sets forth details regarding licensees to the '348 Patent.

### C.   Foreign Counterparts to the '348 Patent

41.   In accordance with Commission Rule 210.12(a)(9)(v), Complainant states that it is aware of no foreign counterparts issued, filed, abandoned, withdrawn, or rejected relating to the '348 Patent.

## VI.   THE ASSERTED '509 PATENT

### A.   Ownership and Asserted Claims of the '509 Patent

42.   United States Patent No. 7,683,509 ("the '509 Patent") is entitled "Electromagnetic Device With Open, Non-Linear Heat Transfer System," and issued March 23, 2016 to inventor Griffith D. Neal.  The '509 Patent issued from United States Patent Application No. 11/489,914 filed on July 19, 2006.

43.   By way of assignment, Complainant Intellectual Ventures owns all rights, title, and interest to the '509 Patent.  As required by Commission Rules 210.12(a)(9)(i)-(ii), certified copies of the '509 Patent and its assignment records are attached as Exhibits 12-17, and 90.

44.   In accordance with Commission Rules 210.12(c)(1)-(2), Appendix E to this Complaint includes one certified and three additional copies of the United States Patent and Trademark Office prosecution history for the '509 Patent.  Appendix F includes a certified copy of the '509 Patent and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history of the '509 Patent.

45.   All maintenance fees for the '509 Patent have been timely paid, and there are no fees currently due.  The next maintenance fee will not be due until March 23, 2018.

46.   The '509 Patent has 16 claims, with five independent claims (claims 1, 3, 4, 5, and 14), and 11 dependent claims.  Complainant is asserting at least claims 1, 2, 14 and 15 of the '509 Patent (the "Asserted '509 Patent Claims") against Aisin, Honda, and Toyota.

### B.   Licenses Relating to the '509 Patent

47.   Certain licensees exist to the '509 Patent.  Pursuant to Commission Rule 210.12(a)(9)(iii), Confidential Exhibit 29, Intellectual Ventures Declaration at ¶8-9, sets forth details regarding licensees to the '509 Patent.

### C.   Foreign Counterparts to the '509 Patent

48.   In accordance with Commission Rule 210.12(a)(9)(v), Complainant states that it is aware of no foreign counterparts issued, filed, abandoned, withdrawn, or rejected relating to the '509 Patent.

## VII.   THE ASSERTED '944 PATENT

### A.   Ownership and Asserted Claims of the '944 Patent

49.   United States Patent No. 7,067,944 ("the '944 Patent") is entitled "Motor with encapsulated stator and method of making same," and issued June 27, 2006 to inventors Dennis K. Lieu and Griffith D. Neal.  The '944 Patent issued from United States Patent Application No.

11/035,906 filed on January 14, 2005. The '944 Patent claims priority to United States Patent

Provisional Application number 60/172,287 filed on December 17, 1999.

50.     By way of assignment, Complainant Intellectual Ventures owns all rights, title, and

interest to the '944 Patent. As required by Commission Rules 210.12(a)(9)(i)-(ii), certified

copies of the '944 Patent and its assignment records are attached as Exhibits 18-22, and 90.

51.     In accordance with Commission Rules 210.12(c)(1)-(2), Appendix G to this Complaint

includes one certified and three additional copies of the United States Patent and Trademark

Office prosecution history for the '944 Patent. Appendix H includes a certified copy of the '944

Patent and four copies of each patent and applicable pages of each technical reference mentioned

in the prosecution history of the '944 Patent.

52.     All maintenance fees for the '944 Patent have been timely paid, and there are no fees

currently due. The next maintenance fee will not be due until June 27, 2018.

53.     The '944 Patent has 11 claims, with eight independent claims (claims 1, 3, 4, 6, 7, 9-11),

and three dependent claims (claims 2, 5, and 8). Complainant is asserting at least claim 3 of

the '944 Patent (the "Asserted '944 Patent Claim") against Aisin, BMW, Honda, and Toyota.

### B.     Licenses Relating to the '944 Patent

54.     Certain licensees exist to the '944 Patent. Pursuant to Commission Rule

210.12(a)(9)(iii), Confidential Exhibit 29, Intellectual Ventures Declaration at ¶8-9, sets forth

details regarding licensees to the '944 Patent.

### C.     Foreign Counterparts to the '944 Patent

55.     In accordance with Commission Rule 210.12(a)(9)(v), Complainant identifies below

the only known foreign counterparts to the '944 Patent. Complainant is unaware of any foreign

counterparts other than those identified below.

| Country | Patent No. | Application No. | Title | Filed | Published | Status |
|---------|-----------|-----------------|-------|-------|-----------|--------|
| Australia | AU 2001025803 | AU 25803/01 PCT/US00/34078 | Spindle motor with encapsulated stator and method of making same | Dec 15, 2000 | Sep 6, 2001 | Lapsed |
| Australia | AU 2000062287 | AU 62287/00 PCT/US00/19870 | High speed spindle motor | Jul 19, 2000 | May 2, 2002 | Lapsed |
| Japan | JP 2001095213 | JP 2000-224177 PCT/US00/19870 | High-speed spindle motor | Jul 25, 2000 | Apr 4, 2001 | Withdrawn |

## VIII.   THE ASSERTED '952 PATENT

### A.   Ownership and Asserted Claims of the '952 Patent

56.   United States Patent No. 7,067,952 ("the '952 Patent") is entitled "Stator Assembly Made From A Molded Web Of Core Segments And Motor Using Same," and issued June 27, 2006 to inventor Griffith D. Neal.  The '952 Patent issued from United States Patent Application No. 10/383,219 filed on March 5, 2003.  The '952 Patent claims priority to United States Patent Application number 09/798,511 filed on March 2, 2001.

57.   By way of assignment, Complainant Intellectual Ventures owns all rights, title, and interest to the '952 Patent.  As required by Commission Rules 210.12(a)(9)(i)-(ii), certified copies of the '952 Patent and its assignment records are attached as Exhibits 23-28, and 90.

58.   In accordance with Commission Rules 210.12(c)(1)-(2), Appendix I to this Complaint includes one certified and three additional copies of the United States Patent and Trademark Office prosecution history for the '952 Patent.  Appendix J includes a certified copy of the '952 Patent and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history of the '952 Patent.

59.   All maintenance fees for the '952 Patent have been timely paid, and there are no fees currently due.  The next maintenance fee will not be due until June 27, 2018.

60.    The '952 Patent has 14 claims, with three independent claims (claims 1, 10, and 14),

and 11 dependent claims.  Complainant is asserting at least claims 10 and 12 of the '952 Patent

(the "Asserted '952 Patent Claims") against Denso, Mitsuba, Nidec, Honda, and Toyota.

**B.    Licenses Relating to the '952 Patent**

61.    Certain licensees exist to the '952 Patent.  Pursuant to Commission Rule

210.12(a)(9)(iii), Confidential Exhibit 29, Intellectual Ventures Declaration at ¶¶8-9, sets forth

details regarding licensees to the '952 Patent.

**C.    Foreign Counterparts to the '952 Patent**

62.    In accordance with Commission Rule 210.12(a)(9)(v), Complainant states that it is

aware of no foreign counterparts issued, filed, abandoned, withdrawn, or rejected relating to

the '952 Patent.

## IX.    NON-TECHNICAL DESCRIPTION OF THE PATENTED TECHNOLOGY

63.    The Asserted Patents disclose inventions relating generally to thermoplastic-

encapsulated electric motors.  While all of the Asserted Patents relate to thermoplastic-

encapsulated electric motors, the patents can be grouped into the following sub-categories based

on additional similarity of subject matter:

| "Encapsulation Patents" | "Fluid Channel Patents" | "Segmented Stator Patent" |
|---|---|---|
| '200 and '944 Patents | '348 and '509 Patents | '952 Patent |

64.    The foregoing patent grouping and following non-technical descriptions of the patented

technology are provided solely for the convenience of the Commission and compliance with the

Commission Rules.  These groupings and descriptions are not intended to, and do not, limit,

define, or otherwise affect or inform the construction and/or application of each patent's claim

language and should not be understood to do so.

### A.      The "Encapsulation Patents"

#### 1.      The '200 Patent

65.    The '200 Patent discloses a novel electric motor in which the body of the motor is made from a thermoplastic material that substantially encapsulates the stator and positions it precisely and accurately relative to the other components of the motor.  In order to ensure that the placement of the motor's components does not fluctuate with temperature, the '200 Patent discloses the use of a thermoplastic material with thermal expansion properties that allows the thermoplastic body and the metal motor components to expand and contract at approximately the same rate when the temperature changes.

#### 2.      The '944 Patent

66.    The '944 Patent discloses a novel electric motor in which a thermoplastic material substantially encapsulates the pole assembly and positions it precisely and accurately relative to the other components of the motor.  Undesired movement of motor components caused by vibration and temperature fluctuation is reduced by using the '944 Patent's thermoplastic body structure, which improves the performance of the motor in harsh conditions.

### B.      The "Fluid Channel Patents"

#### 1.      The '348 Patent and '509 Patent

67.    The '348 and '509 Patents disclose novel electric motors in which the electrical conductor is substantially encapsulated in a thermoplastic body that includes physical features to aid in cooling the device with a fluid coolant.  Specifically, the '348 and '509 Patents disclose features molded into the thermoplastic body that allow a coolant fluid to carry away excess heat from the conductors and stator.

16

### C.      The "Segmented Stator Patent"

#### 1.      The '952 Patent

68.    The '952 Patent discloses a novel stator assembly for an electric motor made from a plurality of discrete stator segments with features that allow the segments to be connected to each other in a repeating arch-like structure to form the entire stator.  The '952 Patent teaches encasing individual stator segments in a thermoplastic material.

## X.      UNFAIR ACTS OF PROPOSED RESPONDENTS – PATENT INFRINGEMENT

69.    The unfair acts of the Respondents involve the design, manufacture, importation into the United States, sale for importation into the United States, and/or sale within the United States after importation, of certain infringing thermoplastic-encapsulated electric motors, components thereof, and products and vehicles containing same, including, without limitation, the Accused Products.  These infringing thermoplastic-encapsulated electric motors are generally available for purchase on the open market in the form of vehicle water pumps, coolant pumps, power steering units, actuators, drive motors, transaxle assemblies, and other electric motor devices and vehicles containing the same.  In lieu of providing physical samples of the numerous, generally available, and prevalent devices, Complainant provides charts comparing claims of the Asserted Patents to exemplary products and photographs of the exemplary infringing devices.[2]

70.    Upon information and belief, the Accused Products as listed herein directly infringe at least the Asserted Claims.  Discovery may reveal that the Accused Products infringe additional claims of the Asserted Patents.  In addition, Complainant anticipates that discovery may reveal

---

[2] Complainant believes that the general familiarity of the Accused Products, along with the charts and photographs provided with this complaint, make the provision of physical exhibits unnecessary.  However, should the Commission request physical samples, Complainant will provide physical exhibits to the extent practicable.

that additional products of Respondents infringe the Asserted Patents, including but not limited to unreleased products that will become commercially available in the United States prior to the conclusion of this Investigation.

### A.   BMW

#### 1.   Representative Involved Article

71.   On information and belief, BMW is engaged in the design, manufacture, importation into the United States, sale for importation into the United States, and/or sale within the United States after importation of Accused Products that infringe literally or by equivalence at least the Asserted '200 Patent and '944 Patent Claims.   Complainant has obtained the drive motor for the turbocharger in BMW's 2016 228i, 328i, 428i, X3, X4, and Z4 vehicles ("BMW Actuator") that BMW imported, sold for importation, and/or sold within the United States after importation. Pursuant to Commission Rule 210.12(a)(9)(x), Exhibits 31, 32, and 33 contain photographs of the BMW Actuator.   Exhibits 31, 32, and 33 also contain photographs of the 2016 BMW 228i, 328i, 428i, X3, X4, and Z4 vehicles that, upon information and belief, contain a turbocharger drive motor that is the same or substantially similar to the BMW Actuator.

72.   Pursuant to Commission Rule 210.12(a)(9)(viii), Complainant is required to chart "a representative involved article" of BMW that violates Section 337.   As set forth below, the charts in Exhibits 31, 32, and 33 demonstrate that the representative involved articles violate Section 337.

#### 2.   Infringement of the '200 Patent

73.   Exhibit 31 includes a chart comparing claims 1, 2, 4, 5, 6, and 7 of the '200 Patent to the BMW Actuator and vehicles containing the same.   Exhibit 31 shows that the BMW Actuator and vehicles containing the same are covered by at least claims 1, 2, 4, 5, 6, and 7 of the '200 Patent.

### 3.   Infringement of the '944 Patent

74.   Exhibits 32 and 33 include charts comparing claims 3, 9, and 11 of the '944 Patent to the BMW Actuator and vehicles containing the same.  Exhibits 31 and 32 show that the BMW Actuator and vehicles containing the same are covered by at least claims 3, 9, and 11 of the '944 Patent.

### 4.   Specific Instance of Sale and Importation

75.   BMW imports into the United States, sells for importation into the United States, and/or sells within the United States after importation the BMW Actuator, and 2016 BMW 228i vehicle containing the same depicted in Exhibits 31, 32, and 33.

76.   Pursuant to Commission Rule 210.12(a)(3), Exhibit 34 is a receipt from THEBMWPARTSTORE.COM showing a sale of the BMW Actuator within the United States. As shown in Exhibit 31, the BMW Actuator is the drive motor for the turbocharger that is used in the 2016 BMW 228i, and is marked "Made in Nederland," which, upon information and belief, designates the country of origin.  As shown in Exhibit 35, BMW sells in the United States certain 2016 BMW 228i vehicles, including but not limited to the vehicle that bears the vehicle identification number ("VIN") of WBA1G9C51GV598993.  As shown in Exhibit 35 and Exhibit 36, the final assembly for the 2016 BMW 228i bearing the VIN number of WBA1G9C51GV598993 was in Germany, and therefore it, and all of its components including the BMW Actuator, was imported.

77.   On information and belief, BMW's United States based operations and subsidiaries import into the United States, sell for importation into the United States, and/or sell within the United States after importation Accused Products that are the same or substantially similar to the BMW Actuator and vehicles containing the same.  As shown in Exhibit 37, BMW of North America, LLC is responsible for importation and distribution of BMW vehicles in the United States.  As shown

in Exhibit 38, BMW Manufacturing Co., LLC produces variants of the BMW X3 and X4 vehicles. As shown in Exhibit 31, the BMW X3 and X4 vehicles incorporate turbocharger drive motors that are, on information and belief, the same or substantially similar to the BMW Actuator, and imported, sold for importation, and/or sold within the United States after importation.

78.     Thus, BMW is violating Section 337 of the Tariff Act of 1930 by importing into the United States, selling for importation into the United States, and/or selling within the United States after importation at least the BMW Actuator, and vehicles containing the same, that infringe the '200 Patent, and the '944 Patent.

**B.     Aisin**

**1.     Representative Involved Article**

79.     On information and belief Aisin is engaged in the design, manufacture, importation into the United States, sale for importation into the United States, and/or sale within the United States after importation of Accused Products that infringe literally or by equivalence at least the Asserted '200 Patent, '348 Patent, '509 Patent, and '944 Patent Claims. Complainant has obtained Accused Products designed, manufactured, and sold by Aisin.

80.     As noted below, Exhibits 39-70 include charts comparing the claims of the Asserted Patents to: (1) the Aisin WPT-190 Water Pump ("Aisin WPT-190 Pump"), the Aisin WPT-191 Water Pump ("Aisin WPT-191 Pump"), the Aisin Water Pump with Toyota part number 161A0-39035 ("Aisin 161A0-39035 Pump"), the Aisin Water Pump with Toyota part number G9040-47040 ("Aisin G9040-47040 Pump"), the Aisin WQT-001 Water Pump ("Aisin WQT-001 Pump"), the Aisin WQT-002 Water Pump ("Aisin WQT-002 Pump"), and 2016 Toyota Avalon, Camry, Highlander, RAV4, and Prius vehicles containing the same; and (2) the Aisin Coolant Pump with Honda part number 19200-5K0-A01 ("Aisin 19200-5K0-A01 Pump"), and the Aisin Water Pump with Honda part number 061JO-5K1-A00 ("Aisin 061JO-5K1-A00 Pump") and

2017 Honda Accord vehicles containing same. As set forth in these charts, the Aisin Pumps

practice, in whole or in material part, the technology claimed by the Asserted Patents. Pursuant

to Commission Rule 210.12(a)(9)(x), Exhibits 39-70 contain photographs of the Aisin WPT-190

Pump, Aisin WPT-191 Pump, Aisin 161A0-39035 Pump, Aisin G9040-47040 Pump, Aisin

WQT-001 Pump, Aisin WQT-002 Pump, Aisin 19200-5K0-A01 Pump, and Aisin 061JO-5K1-

A00 Pump.

81.    Pursuant to Commission Rule 210.12(a)(9)(viii), Complainant is required to chart "a

representative involved article" of Aisin that violates Section 337. As set forth below, the charts

in Exhibits 39-70 demonstrate that the representative involved articles violate Section 337.

### 2.    Infringement of the '200 Patent

82.    Exhibit 39 includes a chart comparing claims 1, 2, 4, 6, and 7 of the '200 Patent to the

Aisin WPT-190 Pump and 2016 Toyota Prius vehicles containing the same. Exhibit 39 shows

that the Aisin WPT-190 Pump and vehicles containing the same are covered by at least claims 1,

2, 4, 6, and 7 of the '200 Patent. Exhibit 40 includes a chart comparing claims 1, 2, 4, 6, and 7 of

the '200 Patent to the Aisin WPT-191 Pump and 2016 Toyota Avalon and Camry vehicles

containing the same. Exhibit 40 shows that the Aisin WPT-191 Pump and vehicles containing

the same are covered by at least claims 1, 2, 4, 6, and 7 of the '200 Patent. Exhibit 41 includes a

chart comparing claims 1, 2, 4, 6, and 7 of the '200 Patent to the Aisin 161A0-39035 Pump and

2016 Toyota Prius vehicles containing the same. Exhibit 41 shows that the Aisin 161A0-39035

Pump and vehicles containing the same are covered by at least claims 1, 2, 4, 6, and 7 of the '200

Patent. Exhibit 42 includes a chart comparing claims 1, 2, 4, 6, and 7 of the '200 Patent to the

Aisin G9040-47040 Pump and 2016 Toyota Prius vehicles containing the same. Exhibit 42

shows that the Aisin G9040-47040 Pump and vehicles containing the same are covered by at

least claims 1, 2, 4, 6, and 7 of the '200 Patent. Exhibit 43 includes a chart comparing claims 1,

2, 4, 6, and 7 of the '200 Patent to the Aisin WQT-001 Pump and 2016 Toyota Highlander and Prius vehicles containing the same. Exhibit 43 shows that the Aisin WQT-001 Pump and vehicles containing the same are covered by at least claims 1, 2, 4, 6, and 7 of the '200 Patent. Exhibit 44 includes a chart comparing claims 1, 2, 4, 6, and 7 of the '200 Patent to the Aisin WQT-002 Pump and 2016 Toyota Avalon, Camry, and RAV4 vehicles containing the same. Exhibit 44 shows that the Aisin WQT-002 Pump and vehicles containing the same are covered by at least claims 1, 2, 4, 6, and 7 of the '200 Patent.

83.    Exhibit 45 includes a chart comparing claims 1, 2, 4, 6, and 7 of the '200 Patent to the Aisin 19200-5K0-A01 Pump and 2017 Honda Accord Hybrid vehicles containing the same. Exhibit 45 shows that the Aisin 19200-5K0-A01 Pump and vehicles containing the same are covered by at least claims 1, 2, 4, 6, and 7 of the '200 Patent. Exhibit 46 includes a chart comparing claims 1, 2, 4, 6, and 7 of the '200 Patent to the Aisin 061J0-5K1-A00 Pump and 2017 Honda Accord Hybrid vehicles containing the same. Exhibit 46 shows that the Aisin 061J0-5K1-A00 Pump and vehicles containing the same are covered by at least claims 1, 2, 4, 6, and 7 of the '200 Patent.

### 3.    Infringement of the '348 Patent

84.    Exhibit 47 includes a chart comparing claims 24, 25, 26, and 27 of the '348 Patent to the Aisin WQT-001 Pump and 2016 Toyota Highlander and Prius vehicles containing the same. Exhibit 47 shows that the Aisin WQT-001 Pump and vehicles containing the same are covered by at least claims 24, 25, 26, and 27 of the '348 Patent. Exhibit 48 includes a chart comparing claims 24, 25, 26, and 27 of the '348 Patent to the Aisin WQT-002 Pump and 2016 Toyota Avalon, Camry, and RAV4 vehicles containing the same. Exhibit 48 shows that the Aisin WQT-002 Pump and vehicles containing the same are covered by at least claims 24, 25, 26, and 27 of the '348 Patent. Exhibit 49 includes a chart comparing claims 24, 25, 26, and 27 of the '348

Patent to the G9040-47040 Pump and 2016 Toyota Prius vehicles containing the same. Exhibit 49 shows that the Aisin G9040-47040 Pump and vehicles containing the same are covered by at least claims 24, 25, 26, and 27 of the '348 Patent. Exhibit 50 includes a chart comparing claims 24, 25, 26, and 27 of the '348 Patent to the Aisin 061J0-5K1-A00 Pump and 2017 Honda Accord Hybrid vehicles containing the same. Exhibit 50 shows that the Aisin 061J0-5K1-A00 Pump and vehicles containing the same are covered by at least claims 24, 25, 26, and 27 of the '348 Patent.

### 4.     Infringement of the '509 Patent

85.     Exhibit 51 includes a chart comparing claims 14 and 15 of the '509 Patent to the Aisin WPT-190 Pump and 2016 Toyota Prius vehicles containing the same. Exhibit 51 shows that the Aisin WPT-190 Pump and vehicles containing the same are covered by at least claims 14 and 15 of the '509 Patent. Exhibit 52 includes a chart comparing claims 14 and 15 of the '509 Patent to the Aisin WPT-191 Pump and 2016 Toyota Avalon and Camry vehicles containing the same. Exhibit 52 shows that the Aisin WPT-191 Pump and vehicles containing the same are covered by at least claims 14 and 15 of the '509 Patent. Exhibit 53 includes a chart comparing claims 14 and 15 of the '509 Patent to the Aisin 161A0-39035 Pump and 2016 Toyota Prius vehicles containing the same. Exhibit 53 shows that the Aisin 161A0-39035 Pump and vehicles containing the same are covered by at least claims 14 and 15 of the '509 Patent. Exhibit 54 includes a chart comparing claims 1, 2, 14, and 15 of the '509 Patent to the Aisin WQT-001 Pump and 2016 Toyota Highlander and Prius vehicles containing the same. Exhibit 54 shows that the Aisin WQT-001 Pump and vehicles containing the same are covered by at least claims 1, 2, 14, and 15 of the '509 Patent. Exhibit 55 includes a chart comparing claims 1, 2, 14, and 15 of the '509 Patent to the Aisin WQT-002 Pump and 2016 Toyota Avalon, Camry, and RAV4 vehicles containing the same. Exhibit 55 shows that the Aisin WQT-002 Pump and vehicles containing the same are covered by at least claims 1, 2, 14, and 15 of the '509 Patent. Exhibit 56

includes a chart comparing claims 1, 2, 14, and 15 of the '509 Patent to the Aisin G9040-47040 Pump and 2016 Toyota Prius vehicles containing the same. Exhibit 56 shows that the Aisin G9040-47040 Pump and vehicles containing the same are covered by at least claims 1, 2, 14, and 15 of the '509 Patent.

86.    Exhibit 57 includes a chart comparing claims 14 and 15 of the '509 Patent to the Aisin 19200-5K0-A01 Pump and 2017 Honda Accord Hybrid vehicles containing the same. Exhibit 57 shows that the Aisin 19200-5K0-A01 Pump and vehicles containing the same are covered by at least claims 14 and 15 of the '509 Patent. Exhibit 58 includes a chart comparing claims 1, 2, 14, and 15 of the '509 Patent to the Aisin 061J0-5K1-A00 Pump and 2017 Honda Accord Hybrid vehicles containing the same. Exhibit 58 shows that the Aisin 061J0-5K1-A00 Pump and vehicles containing the same are covered by at least claims 1, 2, 14, and 15 of the '509 Patent.

### 5.    Infringement of the '944 Patent

87.    Exhibits 59-60 include charts comparing claims 3, 9, and 11 of the '944 Patent to the Aisin WPT-190 Pump and 2016 Toyota Prius vehicles containing the same. Exhibits 59-60 show that the Aisin WPT-190 Pump and vehicles containing the same are covered by at least claims 3, 9, and 11 of the '944 Patent. Exhibits 61-62 include charts comparing claims 3, 9, and 11 of the '944 Patent to the Aisin WPT-191 Pump and 2016 Toyota Avalon and Camry vehicles containing the same. Exhibits 61-62 show that the Aisin WPT-191 Pump and vehicles containing the same are covered by at least claims 3, 9, and 11 of the '944 Patent. Exhibits 63-64  include charts comparing claims 3, 9, and 11 of the '944 Patent to the Aisin 161A0-39035 Pump and 2016 Toyota Prius vehicles containing the same. Exhibits 63-64 show that the Aisin 161A0-39035 Pump and vehicles containing the same are covered by at least claims 3, 9, and 11 of the '944 Patent. Exhibit 65 includes a chart comparing claim 3 of the '944 Patent to the Aisin WQT-001 Pump and 2015 Toyota Highlander and Prius vehicles containing the same. Exhibit

65 shows that the Aisin WQT-001 Pump and vehicles containing the same are covered by at least claim 3 of the '944 Patent. Exhibit 66 includes a chart comparing claim 3 of the '944 Patent to the Aisin WQT-002 Pump and 2015 Toyota Avalon, Camry, and RAV4 vehicles containing the same. Exhibit 66 shows that the Aisin WQT-002 Pump and vehicles containing the same are covered by at least claim 3 of the '944 Patent. Exhibit 67 includes a chart comparing claim 3 of the '944 Patent to the Aisin G9040-47040 Pump and 2015 Toyota Prius vehicles containing the same. Exhibit 67 shows that the Aisin G9040-47040 Pump and vehicles containing the same are covered by at least claim 3 of the '944 Patent.

88.    Exhibits 68-69 include charts comparing claims 3, 9, and 11 of the '944 Patent to the Aisin 19200-5K0-A01 Pump and 2017 Honda Accord Hybrid vehicles containing the same. Exhibits 68-69 show that the Aisin 19200-5K0-A01 Pump and vehicles containing the same are covered by at least claims 3, 9, and 11 of the '944 Patent. Exhibit 70 includes a chart comparing claim 3 of the '944 Patent to the Aisin 061J0-5K1-A00 Pump and 2017 Honda Accord Hybrid vehicles containing the same. Exhibit 70 shows that the Aisin 061J0-5K1-A00 Pump and vehicles containing the same are covered by at least claim 3 of the '944 Patent.

**6.    Specific Instance of Sale and Importation**

89.    Specific instances of sale and importation with respect to Honda and Toyota are alleged in paragraphs 114-115, and 128-133, *infra.*

90.    Further, upon information and belief, Respondent Aisin imports into the United States, sells for importation into the United States, and/or sells within the United States after importation pumps that are used by Respondents and other customers. For example, as shown in Exhibits 39-46, the Aisin WPT-190 Pump[3] that is used in the 2016 Toyota Prius is marked "Made in

---

[3] This pump also has Toyota part number 161A0-29015.

Japan," the Aisin WPT-191 Pump[4] that is used in the 2016 Toyota Avalon and Camry, is marked "Made in Japan," the Aisin 161A0-39035 Pump that is used in the 2016 Toyota Prius is marked "Made in Japan," the Aisin WQT-001 Pump[5] that is used in the 2016 Toyota Highlander and Prius is marked "Made in Japan," the Aisin WQT-002[6] Pump that is used in the 2016 Toyota Avalon, Camry, and RAV4, is marked "Made in Japan," the Aisin G9040-47040 Pump that is used in the 2016 Prius is marked "Made in Japan," the Aisin 19200-5K0-A01 and 061J0-5K1-A00 Pumps that are used in the 2017 Honda Accord Hybrid are marked "Made in Japan," which, upon information and belief, designates the country of origin.

91.   On information and belief, Aisin's United States based operations and subsidiaries import into the United States, sell for importation into the United States and/or sell within the United States after importation Accused Products that are the same or substantially similar to the Aisin WPT-190, Aisin WPT-191, Aisin 161A0-39035, Aisin WQT-001, Aisin WQT-002, Aisin G9040-47040, Aisin 19200-5K0-A01, and Aisin 061J0-5K1-A00 Pumps.  As shown in Exhibits 71, 72, and 73, Aisin Holdings of America, Inc. and Aisin World Corp. of America, Inc. are at least involved in Aisin's North American operations including the sale and distribution of Accused Products in the United States.  As shown in Exhibits 74 and 75, Aisin Technical Center of America, Inc. is involved in research and development of Accused Products for the North American market.  On information and belief, these Accused Products are the same or substantially similar to the Aisin WPT-190, Aisin WPT-191, Aisin 161A0-39035, Aisin WQT-001, Aisin WQT-002, Aisin G9040-47040, Aisin 19200-5K0-A01, and Aisin 061J0-5K1-A00 Pumps that Aisin imported into the United States.

---

[4] This pump also has Toyota part number 161A0-39025.
[5] This pump also has Toyota part number G9040-52010.
[6] This pump also has Toyota part number G9040-33030.

92. Thus, Aisin is violating Section 337 of the Tariff Act of 1930 by importing into the United States, selling for importation into the United States, and selling in the United States after importation vehicle water pumps and coolant pumps that infringe the '200 Patent, '509 Patent, '348 Patent, and '944 Patent, and are incorporated into vehicles that are imported into the United States, sold for importation into the United States, and/or sold within the United States after importation that infringe the '200 Patent, '509 Patent, '348 Patent, and '944 Patent.

### C.    Mitsuba

#### 1.    Representative Involved Article

93. On information and belief Mitsuba is engaged in the design, manufacture, importation into the United States, sale for importation into the United States, and/or sale within the United States after importation of Accused Products that infringe literally or by equivalence at least the Asserted '952 Patent Claims. Complainant has obtained Accused Products designed, manufactured, and sold by Mitsuba.

94. As noted below, Exhibits 76, 77, and 78 include charts comparing the independent claims of the Asserted Patents to the Mitsuba electronic power steering units with Honda part numbers 53602-TV0-E01 ("Mitsuba 53602-TV0-E01 Unit"), 53281-TG7-A20 ("Mitsuba 53281-TG7-A20 Unit"), and 53602-SZT-G01 ("Mitsuba 53602-SZT-G01 Unit"), and Honda 2016 and 2017 Accord, CR-Z, and Pilot vehicles containing the same. As set forth in these charts, the Mitsuba 53602-TV0-E01, Mitsuba 53281-TG7-A20, and Mitsuba 53602-SZT-G01 Units practice, in whole or in material part, the technology claimed by the Asserted Patents. Pursuant to Commission Rule 210.12(a)(9)(x), Exhibits 76, 77, and 78 contain photographs of the Mitsuba 53602-TV0-E01, Mitsuba 53281-TG7-A20, and Mitsuba 53602-SZT-G01 Units.

95. Pursuant to Commission Rule 210.12(a)(9)(viii), Complainant is required to chart "a representative involved article" of Mitsuba that violates Section 337. As set forth below, the

charts in Exhibits 76, 77, and 78 demonstrate that the representative involved articles violate Section 337.

### 2.    Infringement of the '952 Patent

96.    Exhibits 76, 77, and 78 include charts comparing claims 10 and 12 of the '952 Patent to the Mitsuba 53602-TV0-E01, Mitsuba 53281-TG7-A20, and Mitsuba 53602-SZT-G01 Units and Honda Accord, CR-Z, and Pilot vehicles containing the same. Exhibits 76, 77, and 78 show that the Mitsuba 53602-TV0-E01, Mitsuba 53281-TG7-A20, and Mitsuba 53602-SZT-G01 Units and vehicles containing the same are covered by at least claims 10 and 12 of the '952 Patent.

### 3.    Specific Instance of Sale and Importation

97.    Specific instances of sale and importation with respect to Honda are alleged in paragraphs 110-112, *infra*.

98.    Further, upon information and belief, Respondent Mitsuba imports into the United States, sells for importation into the United States, and/or sells within the United States after importation power steering units that are used by Respondents and other customers. For example, as shown in Exhibits 76 and 78, the Mitsuba 53602-TV0-E01 Unit that is used in 2016 and 2017 Honda Accord vehicles is marked "Made in United Kingdom," and the Mitsuba 53602-SZT-G01 Unit that is used in 2016 Honda CR-Z vehicles is marked "Made in Japan" which, upon information and belief, designates the country of origin. Additionally, as show in Exhibit 77, on information and belief, the Mitsuba 53281-TG7-A20 Unit is manufactured outside of the United States.

99.    On information and belief, Mitsuba's United States based operations and subsidiaries import into the United States, sell for importation into the United States, and/or sell within the United States after importation Accused Products that are the same or substantially similar to the Mitsuba 53602-TV0-E01, Mitsuba 53281-TG7-A20, and Mitsuba 53602-SZT-G01 Units. As

shown in Exhibits 79 and 80, American Mitsuba Corp. is at least involved in the sale of Accused

Products in the United States. On information and belief, these Accused Products are the same

or substantially similar to the Mitsuba 53602-TV0-E01, Mitsuba 53281-TG7-A20, and Mitsuba

53602-SZT-G01 Units that Mitsuba imports into the United States.

100. Thus, Mitsuba is violating Section 337 of the Tariff Act of 1930 by importing into the

United States, selling for importation into the United States, and selling within the United States

after importation at least the Mitsuba 53602-TV0-E01, Mitsuba 53281-TG7-A20, and Mitsuba

53602-SZT-G01 Units that infringe the '952 Patent, and that are incorporated into vehicles that

are imported into the United States, sold for importation into the United States, and/or sold

within the United States after importation that infringe the '952 Patent.

### D.   Honda

#### 1.   Representative Involved Article

101. On information and belief, Honda is engaged in the design, manufacture, importation

into the United States, sale for importation into the United States, and/or sale within the United

States after importation of Accused Products that infringe literally or by equivalence at least the

Asserted '200 Patent, '348 Patent, '509 Patent,'944 Patent, and '952 Patent Claims.

Complainant has obtained the Honda 53602-TV0-E01 Power Steering Motor ("Honda 53602-

TV0-E01 Power Steering Motor"), Honda 53281-TG7-A20 Power Steering Motor ("Honda

53281-TG7-A20 Power Steering Motor"), Honda 53602-SZT-G01 Power Steering Motor

("Honda 53602-SZT-G01 Power Steering Motor"), Honda 53600-TY2-A61 Power Steering Gear

("Honda 53600-TY2-A61 Power Steering Gear"), coolant pump with Honda part number 19200-

5K0-A01 ("Honda 19200-5K0-A01 Pump"), and water pump with Honda part number 061JO-

5K1-A00 ("Honda 061JO-5K1-A00 Pump") that Honda imported, sold for importation, and/or

sold within the United States after importation.

102. Pursuant to Commission Rule 210.12(a)(9)(x), Exhibit 76 contains photographs of the Honda 53602-TV0-E01 Power Steering Motor. Exhibit 76 also contains a photograph of the 2017 Honda Accord that, on information and belief, contains a power steering unit that is the same or substantially similar to the Honda 53602-TV0-E01 Power Steering Motor. Exhibit 77 contains photographs of the Honda 53281-TG7-A20 Power Steering Motor. Exhibit 77 also contains a photograph of the 2016 Honda Pilot that, on information and belief, contains a power steering unit that is the same or substantially similar to the Honda 53281-TG7-A20 Power Steering Motor. Exhibit 78 contains photographs of the Honda 53602-SZT-G01 Power Steering Motor. Exhibit 78 also contains a photograph of the 2016 Honda CR-Z that, on information and belief, contains a power steering unit that is the same or substantially similar to the Honda 53602-SZT-G01 Power Steering Motor. Exhibit 81 contains photographs of the Honda 53600-TY2-A61 Power Steering Gear. Exhibit 81 also contains a photograph of the 2016 Acura RLX, which on information and belief, contains a power steering unit that is the same or substantially similar to the Honda 53600-TY2-A61 Power Steering Gear. Exhibit 45 contains photographs of the Honda 19200-5K0-A01 Pump. Exhibit 45 also contains a photograph of the 2017 Honda Accord Hybrid Sedan, which on information and belief, contains a water pump that is the same or substantially similar to the Honda 19200-5K0-A01 Pump. Exhibit 46 contains photographs of the Honda 061JO-5K1-A00 Pump. Exhibit 46 also contains a photograph of the 2017 Honda Accord Hybrid Sedan, which on information and belief, contains a water pump that is the same or substantially similar to the Honda 061JO-5K1-A00 Pump.

103. Pursuant to Commission Rule 210.12(a)(9)(viii), Complainant is required to chart "a representative involved article" of Honda that violates Section 337. As set forth below, the

charts in Exhibits 45-46, 50, 57-58, 68-70, 76-78, and 81 demonstrate that the representative involved articles violate Section 337.

### 2.    Infringement of the '200 Patent

104. Exhibit 45 includes a chart comparing claims 1, 2, 4, 6, and 7 of the '200 Patent to the Honda 19200-5K0-A01 Pump and vehicles containing the same. Exhibit 45 shows that the Honda 19200-5K0-A01 Pump and vehicles containing the same are covered by at least claims 1, 2, 4, 6, and 7 of the '200 Patent. Exhibit 46 includes a chart comparing claims 1, 2, 4, 6, and 7 of the '200 Patent to the Honda 061JO-5K1-A00 Pump and vehicles containing the same. Exhibit 46 shows that the Honda 061JO-5K1-A00 Pump and vehicles containing the same are covered by at least claims 1, 2, 4, 6, and 7 of the '200 Patent.

### 3.    Infringement of the '348 Patent

105. Exhibit 50 includes a chart comparing claims 24, 25, 26, and 27 of the '348 Patent to the Honda 061JO-5K1-A00 Pump and vehicles containing the same. Exhibit 50 shows that the Honda 061JO-5K1-A00 Pump and vehicles containing the same are covered by at least claims 24, 25, 26, and 27 of the '348 Patent.

### 4.    Infringement of the '509 Patent

106. Exhibit 57 includes a chart comparing claims 14 and 15 of the '509 Patent to the Honda 19200-5K0-A01 Pump and vehicles containing the same. Exhibit 57 shows that the Honda 19200-5K0-A01 Pump and vehicles containing the same are covered by at least claims 14 and 15 of the '509 Patent. Exhibit 58 includes a chart comparing claims 1, 2, 14, and 15 of the '509 Patent to the Honda 061JO-5K1-A00 Pump and vehicles containing the same. Exhibit 58 shows that the Honda 061JO-5K1-A00 Pump and vehicles containing the same are covered by at least claims 1, 2, 14, and 15 of the '509 Patent.

### 5.     Infringement of the '944 Patent

107.  Exhibits 68-69 include charts comparing claims 3, 9, and 11 of the '944 Patent to the Honda 19200-5K0-A01 Pump and vehicles containing the same.  Exhibits 68-69 show that the Honda 19200-5K0-A01 Pump and vehicles containing the same are covered by at least claims 3, 9, and 11 of the '944 Patent.  Exhibit 70 includes a chart comparing claim 3 of the '944 Patent to the Honda 061JO-5K1-A00 Pump and vehicles containing the same.  Exhibit 70 shows that the Honda 061JO-5K1-A00 Pump and vehicles containing the same are covered by at least claim 3 of the '944 Patent.

### 6.     Infringement of the '952 Patent

108.  Exhibit 76 includes a chart comparing claims 10 and 12 of the '952 Patent to the Honda 53602-TV0-E01 Power Steering Motor and vehicles containing the same.  Exhibit 76 shows that the Honda 53602-TV0-E01 Power Steering Motor and vehicles containing the same are covered by at least claims 10 and 12 of the '952 Patent.  Exhibit 77 includes a chart comparing claims 10 and 12 of the '952 Patent to the Honda 53281-TG7-A20 Power Steering Motor and vehicles containing the same.  Exhibit 77 shows that the Honda 53281-TG7-A20 Power Steering Motor and vehicles containing the same are covered by at least claims 10 and 12 of the '952 Patent.  Exhibit 78 includes a chart comparing claims 10 and 12 of the '952 Patent to the Honda 53602-SZT-G01 Power Steering Motor and vehicles containing the same.  Exhibit 78 shows that the Honda 53602-SZT-G01 Power Steering Motor and vehicles containing the same are covered by at least claims 10 and 12 of the '952 Patent.  Exhibit 81 includes a chart comparing claims 10 and 12 of the '952 Patent to the Honda 53600-TY2-A61 Power Steering Gear and vehicles containing the same.  Exhibit 81 shows that the Honda 53600-TY2-A61 Power Steering Gear and vehicles containing the same are covered by at least claims 10 and 12 of the '952 Patent.

### 7.    Specific Instance of Sale and Importation

109. Honda imports into the United States, sells for importation into the United States, and/or sells within the United States after importation, the Honda 53602-TV0-E01 Power Steering Motor, Honda 53281-TG7-A20 Power Steering Motor, Honda 53602-SZT-G01 Power Steering Motor, Honda 53600-TY2-A61 Power Steering Gear, Honda 19200-5K0-A01 Pump, and Honda 061J0-5K1-A00 Pump, and 2016 and 2017 Honda Accord, Pilot, and CR-Z vehicles, and 2016 Acura RLX vehicles containing the same depicted in Exhibits 45-46, 76-78, and 81.

110. Pursuant to Commission Rule 210.12(a)(3), Exhibit 82 is a receipt from Bob Rohrman's Schaumburg Honda Automobiles showing a sale of the Honda 53602-TV0-E01 Power Steering Motor within the United States. As shown in Exhibit 76, the Honda 53602-TV0-E01 Power Steering Motor is the power steering unit that is used in the 2017 Honda Accord and is marked "Made in the United Kingdom" which, upon information and belief, designates the country of origin.

111. Pursuant to Commission Rule 210.12(a)(3), Exhibit 83 is a receipt from Bob Rohrman's Schaumburg Honda showing a sale of the Honda 53281-TG7-A20 Power Steering Motor within the United States. As shown in Exhibit 77, the Honda 53281-TG7-A20 Power Steering Motor is the power steering unit that is used in the 2016 Honda Pilot and is, upon information and belief, manufactured outside of the United States.

112. Pursuant to Commission Rule 210.12(a)(3), Exhibit 83 is a receipt from Bob Rohrman's Schaumburg Honda showing a sale of the Honda 53602-SZT-G01 Power Steering Motor within the United States. As shown in Exhibit 78, the Honda 53602-SZT-G01 Power Steering Motor is the power steering unit that is used in the 2016 Honda CR-Z and is marked "Made in Japan" which, upon information and belief, designates the country of origin. As shown in Exhibit 84, Honda sells in the United States certain 2016 Honda CR-Z vehicles, including but

not limited to the vehicle that bears the vehicle identification number ("VIN") of

JHMZF1D66GS001256. As shown in Exhibit 84 and Exhibit 85, the final assembly for the 2016

Honda CR-Z bearing the VIN number of JHMZF1D66GS001256 was in Japan, and therefore it,

and all of its components including the Honda 53602-SZT-G01 Power Steering Motor, was

imported.

113. Pursuant to Commission Rule 210.12(a)(3), Exhibit 86 is a receipt from Muller's

Woodfield Acura showing a sale of the Honda 53600-TY2-A61 Power Steering Gear within the

United States. As shown in Exhibit 81, the 53600-TY2-A61 Power Steering Gear is the power

steering unit that is used in the Acura RLX and is marked "Made in Germany" which, upon

information and belief, designates the country of origin. As shown in Exhibit 87, Honda sells in

the United States certain 2016 Acura RLX vehicles, including but not limited to the vehicle that

bears the vehicle identification number ("VIN") of JH4KC1F93GC001095. As shown in Exhibit

87 and Exhibit 85, the final assembly for the 2016 Acura RLX bearing the VIN number of

JH4KC1F93GC001095 was in Japan, and therefore it, and all of its components including the

Honda 53600-TY2-A61 Power Steering Motor, was imported.

114. Pursuant to Commission Rule 210.12(a)(3), Exhibit 88 is a receipt from Schaumburg

Honda showing a sale of the Honda 19200-5K0-A01 Pump within the United States. As shown

in Exhibit 45, the Honda 19200-5K0-A01 Pump is the coolant pump that is used in the 2017

Honda Accord Hybrid and is marked "Made in Japan" which, upon information and belief,

designates the country of origin.

115. Pursuant to Commission Rule 210.12(a)(3), Exhibit 89 is a receipt from Schaumburg

Honda showing a sale of the Honda 061JO-5K1-A00 Pump within the United States. As shown

in Exhibit 46, the Honda 061JO-5K1-A00 Pump is the power steering unit that is used in the

2017 Honda Accord Hybrid and is marked "Made in Japan" which, upon information and belief, designates the country of origin.

116.  On information and belief, Honda's United States based operations and subsidiaries import into the United States, sell for importation into the United States, and/or sell within the United States after importation Accused Products that are the same or substantially similar to the Honda 53602-TV0-E01 Power Steering Motor, Honda 53281-TG7-A20 Power Steering Motor, Honda 53602-SZT-G01 Power Steering Motor, Honda 53600-TY2-A61 Power Steering Gear, 19200-5K0-A01 Pump, and 061JO-5K1-A00 Pump, and vehicles containing the same.  As shown in Exhibit 91 at 11, Honda North America, Inc. and American Honda Motor Co., Inc. are at least involved in the importation, sale, and distribution of Accused Products in the United States.  As shown in Exhibit 91 at 11, Honda R&D Americas, Inc. is involved in the research and development of vehicles in the United States.  As shown in Exhibit 91 at 22, Honda of America Manufacturing, Inc. is involved in the manufacture of Honda Accord vehicles in the United States.  As shown in Exhibit 91 at 23, Honda Manufacturing of Alabama, LLC is involved in the manufacture of Honda Pilot vehicles in the United States.  As shown in Exhibits 45-46, and 76-77 the 2017 Honda Accord and 2016 Honda Pilot incorporate power steering units and pumps that are, on information and belief, the same or substantially similar to the Honda 53602-TV0-E01 Power Steering Motor, Honda 53281-TG7-A20 Power Steering Motor, Honda 19200-5K0-A01 Pump, and Honda 061JO-5K1-A00 Pump imported, sold for importation, and/or sold after importation into the United States.

117.  Thus, Honda is violating Section 337 of the Tariff Act of 1930 by importing into the United States, selling for importation into the United States, and/or selling within the United States after importation at least the Honda 53602-TV0-E01 Power Steering Motor, Honda 53281-TG7-A20 Power Steering Motor, Honda 53602-SZT-G01 Power Steering Motor, Honda 53600-TY2-A61 Power Steering Gear, 19200-5K0-A01 Pump, and 061JO-5K1-A00 Pump, and

vehicles containing the same, that infringe the '200 Patent, '348 Patent, '509 Patent, '944 Patent, and '952 Patent.

### E.    Toyota

#### 1.    Representative Involved Article

118.  On information and belief, Toyota is engaged in the design, manufacture, importation into the United States, sale for importation into the United States, and/or sale within the United States after importation of Accused Products that infringe literally or by equivalence at least the Asserted '200 Patent, '348 Patent, '509 Patent, '944 Patent, and '952 Patent Claims. Complainant has obtained the 2016 Lexus ES power steering unit with Toyota part number 89650-33640 ("Lexus Power Steering Unit"), Toyota water pump with Toyota part number 161A0-39025 ("Toyota 161A0-39025 Pump"), Toyota water pump with Toyota part number 161A0-39035 ("Toyota 161A0-39035 Pump"), Toyota water pump with Toyota part number 161A0-29015 ("Toyota 161A0-29015 Pump"), Toyota water pump with Toyota part number G9040-33030 ("Toyota G9040-33030 Pump"), Toyota water pump with Toyota part number G9040-47040 ("Toyota G9040-47040 Pump"), Toyota water pump with Toyota part number G9040-52010 ("Toyota G9040-52010 Pump"), and 2017 Toyota Hybrid Transaxle Assembly ("Toyota Transaxle Assembly") that Toyota imported, sold for importation, and/or sold within the United States after importation.

119.  Pursuant to Commission Rule 210.12(a)(9)(x), Exhibit 92  contains photographs of the Lexus Power Steering Unit. Exhibit 92  also contains a photograph of the 2016 Lexus ES, which on information and belief, contains a power steering unit that is the same or substantially similar to the Lexus Power Steering Unit. Exhibit 40  contains photographs of the Toyota 161A0-39025 Pump. Exhibit 40  also contains a photograph of the 2016 Toyota Avalon and Camry which, on information and belief, contain a pump that is the same or substantially similar to the Toyota

161A0-39025 Pump.  Exhibit 41  contains photographs of the Toyota 161A0-39035 Pump.

Exhibit 41  also contains a photograph of the 2016 Toyota Prius, which on information and belief,

contains a pump that is the same or substantially similar to the Toyota 161A0-39035 Pump.

Exhibit 39  contains photographs of the Toyota 161A0-29015 Pump.  Exhibit 39  also contains a

photograph of the 2016 Toyota Prius, which on information and belief, contains a pump that is

the same or substantially similar to the Toyota 161A0-29015 Pump.  Exhibit 44  contains

photographs of the G9040-33030 Pump.  Exhibit 44  also contains a photograph of the 2016

Toyota Avalon, Camry, and RAV4, which on information and belief, contain a pump that is the

same or substantially similar to the Toyota G9040-33030 Pump.  Exhibit 42  contains

photographs of the G9040-47040 Pump.  Exhibit 42  also contains a photograph of the 2016

Toyota Prius which on information and belief, contains a pump that is the same or substantially

similar to the Toyota G9040-47040 Pump.  Exhibit 43  contains photographs of the G9040-

52010 Pump.  Exhibit 43  also contains a photograph of the 2016 Toyota Highlander and Prius,

which on information and belief, contain a pump that is the same or substantially similar to the

Toyota G9040-52010 Pump.  Exhibit 93  contains photographs of the Toyota Transaxle

Assembly.  Exhibit 93  also contains photographs of the 2017 Toyota Avalon, Camry,

Highlander, Prius, and RAV4, which on information and belief, contain a transaxle assembly that

is the same or substantially similar to the Toyota Transaxle Assembly.

120.  Pursuant to Commission Rule 210.12(a)(9)(viii), Complainant is required to chart "a

representative involved article" of Toyota that violates Section 337.  As set forth below, the

charts in Exhibits 39-44, 47-49, 51-56, 59-67, 92-93 demonstrate that the representative involved

articles violate Section 337.

### 2.      Infringement of the '200 Patent

121. Exhibit 40 includes a chart comparing claims 1, 2, 4, 6, and 7 of the '200 Patent to the

Toyota 161A0-39025 Pump and vehicles containing the same. Exhibit 40 shows that the Toyota

161A0-39025 Pump and vehicles containing the same are covered by at least claims 1, 2, 4, 6,

and 7 of the '200 Patent. Exhibit 41 includes a chart comparing claims 1, 2, 4, 6, and 7 of

the '200 Patent to the Toyota 161A0-39035 Pump and vehicles containing the same. Exhibit 41

shows that the Toyota 161A0-39035 Pump and vehicles containing the same are covered by at

least claims 1, 2, 4, 6, and 7 of the '200 Patent. Exhibit 39 includes a chart comparing claims 1,

2, 4, 6, and 7 of the '200 Patent to the Toyota 161A0-29015 Pump and vehicles containing the

same. Exhibit 39 shows that the Toyota 161A0-29015 Pump and vehicles containing the same

are covered by at least claims 1, 2, 4, 6, and 7 of the '200 Patent. Exhibit 44 includes a chart

comparing claims 1, 2, 4, 6, and 7 of the '200 Patent to the Toyota G9040-33030 Pump and

vehicles containing the same. Exhibit 44 shows that the Toyota G9040-33030 Pump and

vehicles containing the same are covered by at least claims 1, 2, 4, 6, and 7 of the '200 Patent.

Exhibit 42 includes a chart comparing claims 1, 2, 4, 6, and 7 of the '200 Patent to the Toyota

G9040-47040 Pump and vehicles containing the same. Exhibit 42 shows that the Toyota

G9040-47040 Pump and vehicles containing the same are covered by at least claims 1, 2, 4, 6,

and 7 of the '200 Patent. Exhibit 43 includes a chart comparing claims 1, 2, 4, 6, and 7 of

the '200 Patent to the Toyota G9040-52010 Pump and vehicles containing the same. Exhibit 43

shows that the Toyota G9040-52010 Pump and vehicles containing the same are covered by at

least claims 1, 2, 4, 6, and 7 of the '200 Patent.

### 3.      Infringement of the '348 Patent

122. Exhibit 48 includes a chart comparing claims 24, 25, 26, and 27 of the '348 Patent to

the Toyota G9040-33030 Pump and vehicles containing the same. Exhibit 48 shows that the

38

Toyota G9040-33030 Pump and vehicles containing the same are covered by at least claims 24, 25, 26, and 27 of the '348 Patent. Exhibit 49 includes a chart comparing claims 24, 25, 26, and 27 of the '348 Patent to the Toyota G9040-47040 Pump and vehicles containing the same. Exhibit 49 shows that the Toyota G9040-47040 Pump and vehicles containing the same are covered by at least claims 24, 25, 26, and 27 of the '348 Patent. Exhibit 47 includes a chart comparing claims 24, 25, 26, and 27 of the '348 Patent to the Toyota G9040-52010 Pump and vehicles containing the same. Exhibit 47 shows that the Toyota G9040-52010 Pump and vehicles containing the same are covered by at least claims 24, 25, 26, and 27 of the '348 Patent.

### 4.    Infringement of the '509 Patent

123. Exhibit 52 includes a chart comparing claims 14 and 15 of the '509 Patent to the Toyota 161A0-39025 Pump and vehicles containing the same. Exhibit 52 shows that the Toyota 161A0-39025 Pump and vehicles containing the same are covered by at least claims 14 and 15 of the '509 Patent. Exhibit 53 includes a chart comparing claims 14 and 15 of the '509 Patent to the Toyota 161A0-39035 Pump and vehicles containing the same. Exhibit 53 shows that the Toyota 161A0-39035 Pump and vehicles containing the same are covered by at least claims 14 and 15 of the '509 Patent. Exhibit 51 includes a chart comparing claims 14 and 15 of the '509 Patent to the Toyota 161A0-29015 Pump and vehicles containing the same. Exhibit 51 shows that the Toyota 161A0-29015 Pump and vehicles containing the same are covered by at least claims 14 and 15 of the '509 Patent. Exhibit 55 includes a chart comparing claims 1, 2, 14, and 15 of the '509 Patent to the Toyota G9040-33030 Pump and vehicles containing the same. Exhibit 55 shows that the Toyota G9040-33030 Pump and vehicles containing the same are covered by at least claims 1, 2, 14, and 15 of the '509 Patent. Exhibit 56 includes a chart comparing claims 1, 2, 14, and 15 of the '509 Patent to the Toyota G9040-47040 Pump and vehicles containing the same. Exhibit 56 shows that the Toyota G9040-47040 Pump and

vehicles containing the same are covered by at least claims 1, 2, 14, and 15 of the '509 Patent. Exhibit 54 includes a chart comparing claims 1, 2, 14, and 15 of the '509 Patent to the Toyota G9040-52010 Pump and vehicles containing the same. Exhibit 54 shows that the Toyota G9040-52010 Pump and vehicles containing the same are covered by at least claims 1, 2, 14, and 15 of the '509 Patent.

### 5.     Infringement of the '944 Patent

124. Exhibits 61-62 include charts comparing claims 3, 9, and 11 of the '944 Patent to the Toyota 161A0-39025 Pump and vehicles containing the same. Exhibits 61-62 show that the Toyota 161A0-39025 Pump and vehicles containing the same are covered by at least claims 3, 9, and 11 of the '944 Patent. Exhibits 63-64 include charts comparing claims 3, 9, and 11 of the '944 Patent to the Toyota 161A0-39035 Pump and vehicles containing the same. Exhibits 63-64 show that the Toyota 161A0-39035 Pump and vehicles containing the same are covered by at least claims 3, 9, and 11 of the '944 Patent. Exhibits 59-60 include charts comparing claims 3, 9, and 11 of the '944 Patent to the Toyota 161A0-29015 Pump and vehicles containing the same. Exhibits 59-60 show that the Toyota 161A0-29015 Pump and vehicles containing the same are covered by at least claims 3, 9, and 11 of the '944 Patent. Exhibit 66 includes a chart comparing claim 3 of the '944 Patent to the Toyota G9040-33030 Pump and vehicles containing the same. Exhibit 66 shows that the Toyota G9040-33030 Pump and vehicles containing the same are covered by at least claim 3 of the '944 Patent. Exhibit 67 includes a chart comparing claim 3 of the '944 Patent to the Toyota G9040-47040 Pump and vehicles containing the same. Exhibit 67 shows that the Toyota G9040-47040 Pump and vehicles containing the same are covered by at least claim 3 of the '944 Patent. Exhibit 65 includes a chart comparing claim 3 of the '944 Patent to the Toyota G9040-52010 Pump and vehicles containing the same. Exhibit 65 shows that the Toyota G9040-52010 Pump and vehicles containing the same are covered by at

least claim 3 of the '944 Patent.  Exhibit 93 includes a chart comparing claims 9 and 11 of

the '944 Patent to the Toyota Transaxle Assembly and vehicles containing the same.  Exhibit 93

shows that the Toyota Transaxle Assembly and vehicles containing the same are covered by at

least claims 9 and 11 of the '944 Patent.

### 6.      Infringement of the '952 Patent

125.  Exhibit 92 includes a chart comparing claims 10 and 12 of the '952 Patent to the Lexus

Power Steering Unit and vehicles containing the same.  Exhibit 92 shows that the Lexus Power

Steering Unit and vehicles containing the same are covered by at least claims 10 and 12 of

the '952 Patent.

### 7.      Specific Instance of Sale and Importation

126.  Toyota imports into the United States, sells for importation into the United States,

and/or sells within the United States after importation the Lexus Power Steering Unit, Toyota

161A0-39025 Pump, Toyota 161A0-39035 Pump, Toyota 161A0-29015 Pump, Toyota G9040-

33030 Pump, Toyota G9040-47040 Pump, and Toyota G9040-52010 Pump, and 2016 Lexus ES,

and Toyota Avalon, Highlander, and Prius vehicles containing the same depicted in Exhibits 39-

44, 47-49, 51-56, 59-67, 92-93.

127.  Pursuant to Commission Rule 210.12(a)(3), Exhibit 94 is a receipt from Woodfield

Lexus, Inc. showing a sale of the Lexus Power Steering Unit within the United States.  As shown

in Exhibit 92, the Lexus Power Steering Unit is the power steering unit that is used in the 2016

Lexus ES, and is marked "Made in Japan," which, upon information and belief, designates the

country of origin.  As shown in Exhibit 95, Toyota sells in the United States certain 2016 Lexus

ES vehicles, including but not limited to the vehicle that bears the vehicle identification number

("VIN") of JTHBK1GG9G2215742.  As shown in Exhibit 95 and Exhibit 85, the final assembly

41

for the 2016 Lexus ES bearing the VIN number of JTHBK1GG9G2215742 was in Japan, and therefore it, and all of its components including the Lexus Power Steering Unit, was imported.

128. Pursuant to Commission Rule 210.12(a)(3), Exhibit 96 is a receipt from Olathe Toyota showing a sale of the Toyota 161A0-39025 Pump within the United States. As shown in Exhibit 40, the Toyota 161A0-39025 Pump is the pump that is used in the 2016 Toyota Avalon Hybrid and is marked "Made is Japan" which, on information and belief, designates the country of origin.

129. Pursuant to Commission Rule 210.12(a)(3), Exhibit 96 is a receipt from Olathe Toyota showing a sale of the Toyota 161A0-39035 Pump within the United States. As shown in Exhibit 41, the Toyota 161A0-39035 Pump is the pump that is used in the 2016 Toyota Prius Four Touring, and is marked "Made in Japan," which, upon information and belief, designates the country of origin. As shown in Exhibit 97, Toyota sells in the United States certain 2016 Toyota Prius Four Touring vehicles, including but not limited to the vehicle that bears the vehicle identification number ("VIN") of JTDKARFU4G3012181. As shown in Exhibit 97 and Exhibit 85, the final assembly for the 2016 Toyota Prius bearing the VIN number of JTDKARFU4G3012181 was in Japan, and therefore it, and all of its components including the Toyota 161A0-39035 Pump, was imported.

130. Pursuant to Commission Rule 210.12(a)(3), Exhibit 98 is a receipt from Olathe Toyota showing a sale of the Toyota 161A0-29015 Pump within the United States. As shown in Exhibit 39, the Toyota 161A0-29015 Pump is the pump that is used in the 2016 Toyota Prius V Two, and is marked "Made in Japan," which, upon information and belief, designates the country of origin. As shown in Exhibit 99, Toyota sells in the United States certain 2016 Toyota Prius Two vehicles, including but not limited to the vehicle that bears the vehicle identification number

42

("VIN") of JTDZN3EU7GJ051506. As shown in Exhibit 99 and Exhibit 85, the final assembly

for the 2016 Toyota Prius bearing the VIN number of JTDZN3EU7GJ051506 was in Japan, and

therefore it, and all of its components including the Toyota 161A0-29015 Pump, was imported.

131. Pursuant to Commission Rule 210.12(a)(3), Exhibit 96 is a receipt from Olathe Toyota

showing a sale of the Toyota G9040-33030 Pump within the United States. As shown in Exhibit

44, the Toyota G9040-33030 Pump is the pump that is used in the 2016 Toyota RAV4 XLE, and

is marked "Made in Japan," which, upon information and belief, designates the country of origin.

As shown in Exhibit 100, Toyota sells in the United States certain 2016 Toyota RAV4 XLE

vehicles, including but not limited to the vehicle that bears the vehicle identification number

("VIN") of 2T3RFREV5GW510221. As shown in Exhibit 100 and Exhibit 85, the final

assembly for the 2016 Toyota RAV4 XLE bearing the VIN number of 2T3RFREV5GW510221

was in Canada, and therefore it, and all of its components including the Toyota G9040-33030

Pump, was imported.

132. Pursuant to Commission Rule 210.12(a)(3), Exhibit 98 is a receipt from Olathe Toyota

showing a sale of the Toyota G9040-47040 Pump within the United States. As shown in Exhibit

42, the Toyota G9040-47040 Pump is the pump that is used in the 2016 Toyota Prius Four

Touring, and is marked "Made in Japan," which, upon information and belief, designates the

country of origin. As shown in Exhibit 97, Toyota sells in the United States certain 2016 Toyota

Prius Four Touring vehicles, including but not limited to the vehicle that bears the vehicle

identification number ("VIN") of JTDKARFU4G3012181. As shown in Exhibit 97 and Exhibit

85, the final assembly for the 2016 Toyota Prius Four Touring bearing the VIN number of

JTDKARFU4G3012181 was in Japan, and therefore it, and all of its components including the

Toyota G9040-47040 Pump, was imported.

133. Pursuant to Commission Rule 210.12(a)(3), Exhibit 98 is a receipt from Olathe Toyota showing a sale of the Toyota G9040-52010 Pump within the United States. As shown in Exhibit 43, the Toyota G9040-52010 Pump is the pump that is used in the 2016 Toyota Highlander, and is marked "Made in Japan," which, on information and belief, designates the country of origin.

134. Pursuant to Commission Rule 210.12(a)(3), Exhibit 101 is a receipt from Schaumburg Toyota showing a sale of the Toyota Transaxle Assembly within the United States. As shown in Exhibit 93, the Toyota Transaxle Assembly is the transaxle assembly that is used in the 2017 Toyota Prius Four, and is, upon information and belief, made in Japan. As shown in Exhibit 102, Toyota sells in the United States certain 2017 Toyota Prius Four vehicles, including but not limited to the vehicle that bears the vehicle identification number ("VIN") of JTDKARFU3H3035081. As shown in Exhibit 102 and Exhibit 85, the final assembly for the 2017 Toyota Prius Four bearing the VIN number of JTDKARFU3H3035081 was in Japan, and therefore it, and all of its components including the Toyota Transaxle Assembly, was imported.

135. On information and belief, Toyota's United States based operations and subsidiaries import into the United States, sell for importation into the United States, and/or sell within the United States after importation Accused Products that are the same or substantially similar to the Lexus Power Steering Unit, 161A0-39025 Pump, 161A0-39035 Pump, 161A0-29015 Pump, G9040-33030 Pump, G9040-47040 Pump, G9040-52010 Pump, and Toyota Transaxle Assembly, and vehicles containing the same. As shown in Exhibit 103 at 7-8, Toyota Motor North America, Inc. is the corporate parent of Toyota's U.S. sales and manufacturing operating units, including Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing, Kentucky, Inc., and Toyota Motor Manufacturing Indiana, Inc. As shown in Exhibit 103 at 7, Toyota Motor Sales, U.S.A., Inc. is at least involved in the sales and distribution of Accused Products throughout the United States. As shown in Exhibit 103 at 8, Toyota Motor

Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing, Kentucky, Inc., and Toyota Motor Manufacturing Indiana, Inc. are involved in the research and development and manufacturing of vehicles, including the Toyota Avalon, Camry, Highlander, and Lexus ES vehicles in the United States.  As shown in Exhibits 39-44, 47-49, 51-56, 59-67, 92-93, the Toyota Avalon, Camry, Highlander, and Lexus ES vehicles incorporate power steering units, pumps, and transaxle assemblies that are, on information and belief, the same or substantially similar to the Lexus Power Steering Unit, 161A0-39025 Pump, 161A0-39035 Pump, G9040-33030 Pump, G9040-52010 Pump, and Toyota Transaxle Assembly imported, sold for importation, and/or sold after importation into the United States.

136.  Thus, Toyota is violating Section 337 of the Tariff Act of 1930 by importing into the United States, selling for importation into the United States, and/or selling within the United States after importation at least the Lexus Power Steering Unit, 161A0-39025 Pump, 161A0-39035 Pump, 161A0-29015 Pump, G9040-33030 Pump, G9040-47040 Pump, G9040-52010 Pump, and Toyota Transaxle Assembly and vehicles containing the same, that infringe the '200 Patent, '348 Patent, '509 Patent, '944 Patent, and '952 Patent.

### F.   Nidec

#### 1.   Representative Involved Article

137.  On information and belief Nidec is engaged in the design, manufacture, importation into the United States, sale for importation into the United States, and/or sale within the United States after importation of Accused Products that infringe literally or by equivalence at least the Asserted '952 Patent Claims.  Complainant has obtained Accused Products designed, manufactured, and sold by Nidec.

138.  As noted below, Exhibit 81  includes a chart comparing the independent claims of the Asserted Patents to the Nidec Assembly Steering Gear with Honda part number 53600-TY2-A61

("Nidec 53600-TY2-A61 Assembly"). As set forth in the chart, the Nidec 53600-TY2-A61 Assembly practices, in whole or in material part, the technology claimed by the Asserted Patents. Pursuant to Commission Rule 210.12(a)(9)(x), Exhibit 81 contains photographs of the Nidec 53600-TY2-A61 Assembly.

139. Pursuant to Commission Rule 210.12(a)(9)(viii), Complainant is required to chart "a representative involved article" of Nidec that violates Section 337. As set forth below, the chart in Exhibit 81 demonstrates that the representative involved article violates Section 337.

### 2.    Infringement of the '952 Patent

140. Exhibit 81 includes a chart comparing claims 10 and 12 of the '952 Patent to the Nidec 53600-TY2-A61 Assembly and 2016 Acura RLX vehicle containing the same. Exhibit 81 shows that the Nidec 53600-TY2-A61 Assembly and vehicles containing the same are covered by at least claims 10 and 12 of the '952 Patent.

### 3.    Specific Instance of Sale and Importation

141. Specific instances of sale and importation with respect to Honda are alleged in paragraph 113, *supra.*

142. Further, upon information and belief, Respondent Nidec imports into the United States, sells for importation into the United States, and/or sells within the United States after importation vehicle power steering motors that are used by Respondents and other customers. For example, as shown in Exhibit 81, the Nidec 53600-TY2-A61 Assembly which is used in the 2016 Acura RLX, is marked "Made in Germany," which, upon information and belief, designates the country of origin.

143. On information and belief, Nidec's United States based operations and subsidiaries import into the United States, sell for importation into the United States, and/or sell within the United States after importation Accused Products that are the same or substantially similar to the

Nidec 53600-TY2-A61 Assembly. As shown in Exhibit 104 and Exhibit 105, Nidec

Automotive Motor Americas, LLC is at least involved in the sale and distribution of Accused

Products in the United States. On information and belief, these Accused Products are the same

or substantially similar to the Nidec 53600-TY2-A61 Assembly that Nidec imported into the

United States.

144. Thus, Nidec is violating Section 337 of the Tariff Act of 1930 by importing into the

United States, selling for importation into the United States, and selling in the United States after

importation at least the Nidec 53600-TY2-A61 Assembly that infringes the '952 Patent, and that

is incorporated into vehicles that are imported into the United States, sold for importation into

the United States, and/or sold within the United States after importation that infringe the '952

Patent.

### G.     Denso

#### 1.     Representative Involved Article

145. On information and belief Denso is engaged in the design, manufacture, importation

into the United States, sale for importation into the United States, and/or sale within the United

States after importation of Accused Products that infringe literally or by equivalence at least the

Asserted '952 Patent Claims. Complainant has obtained Accused Products designed,

manufactured, and sold by Denso.

146. As noted below, Exhibit 92 includes a chart comparing the independent claims of the

Asserted Patents to the Denso Power Steering Motor with Toyota part number 89650-33640

("Denso 89650-33640 Motor"). As set forth in the chart, the Denso 89650-33640 Motor

practices, in whole or in material part, the technology claimed by the Asserted Patents. Pursuant

to Commission Rule 210.12(a)(9)(x), Exhibit 92 contains photographs of the Denso 89650-

33640 Motor.

147. Pursuant to Commission Rule 210.12(a)(9)(viii), Complainant is required to chart "a representative involved article" of Denso that violates Section 337. As set forth below, the chart in Exhibit 92 demonstrates that the representative involved article violates Section 337.

### 2.    Infringement of the '952 Patent

148. Exhibit 92 includes a chart comparing claims 10 and 12 of the '952 Patent to the Denso 89650-33640 Motor and 2016 Lexus ES vehicle containing the same. Exhibit 92 shows that the Denso 89650-33640 Motor and vehicles containing the same are covered by at least claims 10 and 12 of the '952 Patent.

### 3.    Specific Instance of Sale and Importation

149. Specific instances of sale and importation with respect to Toyota are alleged in paragraph 127, *supra.*

150. Further, upon information and belief, Respondent Denso imports into the United States, sells for importation into the United States, and/or sells within the United States after importation vehicle power steering motors that are used by Respondents and other customers. For example, as shown in Exhibit 92, the Denso 89650-33640 Motor which is used in the 2016 Lexus ES, is marked "Made in Japan," which, upon information and belief, designates the country of origin.

151. On information and belief, Denso's United States based operations and subsidiaries import into the United States, sell for importation into the United States, and/or sell within the United States after importation Accused Products that are the same or substantially similar to the Denso 89650-33640 Motor. As shown in Exhibit 106 and Exhibit 107, Denso International America, Inc. is the parent company for Denso's North American operations, and is at least involved in the sale and distribution of Accused Products in the United States. On information and belief, these Accused Products are the same or substantially similar to the Denso 89650-33640 Motor that Denso imported into the United States.

152. Thus, Denso is violating Section 337 of the Tariff Act of 1930 by importing into the United States, selling for importation into the United States, and selling in the United States after importation the Denso 89650-33640 Motor that infringes the '952 Patent, and that is incorporated into vehicles that are imported into the United States, sold for importation into the United States, and/or sold within the United States after importation that infringe the '952 Patent.

## XI.   HARMONIZED TARIFF SCHEDULE INFORMATION

153. On information and belief, the articles subject to this Complaint are classifiable under at least the following headings and subheadings of the Harmonized Tariff Schedule ("HTS") of the United States: (A) 8413.30 (Fuel, lubricating or cooling medium pumps for internal combustion piston engines); (B) 8413.30.10 (Fuel-injection pumps for compression-ignition engines); (C) 8413.30.9030 (Fuel pumps); (D) 8413.30.9060 (Lubricating pumps); (E) 8413.91 (Parts: Of Pumps); (F) 8419.91.10 (Parts: Of fuel-injection pumps for compression-ignition engines); (G) 8501 (Electric motors and generators (excluding generating sets)); (H) 8503.00 (Parts suitable for use solely or principally with the machines of heading 8501 or 8502); (I) 8511 (Electrical ignition or starting equipment of a kind used for spark-ignition or compression-ignition internal combustion engines (for example, ignition magnetos, magneto-dynamos, ignition coils, spark plugs and glow plugs, starter motors); generators (for example, dynamos, alternators) and cut-outs of a kind used in conjunction with such engines; parts thereof); (J) 8511.40.00 (Starter motors and dual purpose starter-generators); (K) 8703 (Motor cars and other motor vehicles principally designed for the transport of persons (other than those of heading 8702), including station wagons and racing cars); (L) 8704 (Motor vehicles for the transport of goods); (M) 8706.00 (Chassis fitted with engines, for the motor vehicles of headings 8701 to 8705); (N) 8708.40 (Gear boxes and parts thereof); (O) 8708.94 (Steering wheels, steering columns and steering boxes; parts thereof); (P) 9902.10.63 (Steering gear assemblies for single-

49

pinion constant ratio electronic power assisted steering systems rated at 80 amperes at 12V, the foregoing designed for use in hybrid motor vehicles of heading 8703 (provided for in subheading 8708.94.75)).

154. These HTS identifications are for illustrative purposes only in compliance with the Commission Rules and are not intended to restrict the scope of the investigation.

## XII.    RELATED LITIGATION

155. Complainant Intellectual Ventures is asserting each of the '200 Patent, '348 Patent, '509 Patent, '944 Patent, and '952 Patent in actions filed on March 20, 2017 in the United States District Court for the District of Delaware, styled as *Intellectual Ventures II LLC v. Bayerische Motoren Werke AG, et al.*, (D. Del.); *Intellectual Ventures II LLC v. Honda Motor Co., Ltd., et al.*, (D. Del.); *Intellectual Ventures II LLC v. Aisin Seiki Co., Ltd.*, (D. Del.); *Intellectual Ventures II LLC v. Mitsuba Corp, et al.*, (D. Del.); *Intellectual Ventures II LLC v. Nidec Corp., et al.*, (D. Del.); *Intellectual Ventures II LLC v. Toyota Motor Corporation*, (D. Del.); and *Intellectual Ventures II LLC v. Denso Corporation, et al.*, (D. Del.).

156. Other than the litigations specified above, to Complainant's knowledge the Asserted Patents are not and have not been the subject of any current or prior litigation.

## XIII.   DOMESTIC INDUSTRY RELATING TO THE ASSERTED PATENTS

157. A domestic industry as defined in Section 337(a) exists in the United States and is in the process of being established as the result of domestic activities related to products that practice the Asserted Patents. These activities include the current and anticipated future significant and substantial domestic investments of licensees: Encap Technologies, Inc. ("Encap") in at least certain servo motors, oil pumps, and water pumps; and Ford Motor Company ("Ford") in at least the Ford F-150 vehicle.

158.  Pursuant to Commission Rule 210.12(a)(9)(iv), Complainant has attached as Confidential Exhibit 108 a copy of the Encap patent purchase and license agreement.  Pursuant to Commission Rule 210.12(a)(9)(iv), Complainant has attached as Confidential Exhibit 109 a copy of the Ford license agreement.

### A.     Encap Technologies, Inc. & Intec Group, Inc.

159.  Encap Technologies, Inc. ("Encap") is the predecessor-in-interest of the Asserted Patents and, by virtue of a license back granted by Complainant, Encap is fully licensed to practice each of the Asserted Patents.  Confidential Exhibit 108 ("Encap Purchase Agreement").  Within the United States, Encap designs, develops, manufactures, and sells products that use technology claimed by the Asserted Patents.  Related manufacturing entity Intec Group, Inc. ("Intec") is a manufacturing affiliate of Encap that manufactures within the United States certain Encap products that practice the Asserted Patents.  Encap and Intec each have facility and employees in Palatine, Illinois, images of which are depicted below, where the relevant activities occur.



Intec facility in Palatine, IL.



Interior of Intec facility in Palatine, IL.

160. Encap and Intec together make significant and substantial domestic investments in connection with the protected articles that practice the Asserted Patents, including in connection with their manufacture. As a result of their activities and related investments, a domestic industry in the United States exists and is in the process of being established under Section 337(a)(3)(A) due to Encap and Intec's significant investment in plant and equipment; under 337(a)(3)(B) due to Encap and Intec's significant employment of labor and capital; and under Section 337(a)(3)(C) due to Encap's substantial investment in research and development with respect to each of the Asserted Patents.

161. Encap is an American-based company with a principal place of business in Palatine, Illinois. Founded in 1997, Encap is a leading innovator in electro-magnetic devices and provides component design, manufacturing cell installation, prototyping, training, and contract manufacturing services to customers seeking turnkey implementation of thermoplastic encapsulation.

162. Encap provides its customers with design and manufacturing solutions related to the thermoplastic encapsulation of a wide range of devices, including motors, pumps, and components thereof. Exhibit 110. Encap's Palatine location comprises extensive manufacturing and research and development facilities used to provide these design and manufacturing solutions.

52

163.  Encap designs and manufactures, or has manufactured on its behalf, electric motors and components of electric motors that practice one or more of the Asserted Patents (the "Encap Domestic Industry Products"), as set forth in Confidential Exhibit 30 (the "Encap Declaration"). Each of the Encap Domestic Industry Products practices one or more of the Asserted Patents, as set forth in the Encap Declaration, Confidential Exhibit 111, and claim charts in Confidential Exhibits 112, 127-133.

164.  Encap and Intec invest significant sums in domestic plant and equipment relating to the Encap Domestic Industry Products.  Details relating to Encap and Intec's domestic expenditures on plant and equipment are set forth in the Encap Declaration at ¶¶ 27-40.

165.  Encap and Intec also invest significant sums in domestic labor and capital relating to the Encap Domestic Industry Products.  Details relating to Encap and Intec's domestic expenditures on labor and capital dedicated to the Encap Domestic Industry Products, are set forth in the Encap Declaration at ¶¶ 41-45.

166.  Encap also invests significant and substantial sums relating to the research and development of the Encap Domestic Industry Products.  Details relating to Encap's domestic expenditures on research and development dedicated to the Encap Domestic Industry Products, are set forth in the accompanying Encap Declaration.

167.  A domestic industry is also in the process of being established with respect to each of the Asserted Patents.  Encap and Intec domestic investments related to the process of establishing a domestic industry with respect to each of the Asserted Patents are set forth in the Encap Declaration at ¶¶ 47-50.

**B.  Ford Motor Company**

168.  Ford Motor Company ("Ford") is a titan of American industry.  It employs tens of thousands of workers in the United States involved in the manufacture of dozens of different

types of passenger and commercial vehicles in tens of millions of square feet of domestic facility. Ford is licensed to practice the Asserted Patents, and it designs, develops, manufactures, and sells products that practice one or more claims of the asserted '944 Patent. Confidential Exhibit 109 (Ford license agreement).

169. The Ford F-150 vehicle (the "Ford F-150") practices the '944 Patent, as set forth in the claim chart in Confidential Exhibit 112.

170. Ford makes significant and substantial domestic investments in connection with the Ford F-150 (the "Ford Domestic Industry Product"). As a result of these investments, a domestic industry in the United States exists under Section 337(a)(3)(A) due to Ford's significant investment in plant and equipment; under 337(a)(3)(B) due to Ford's significant employment of labor and capital; and under Section 337(a)(3)(C) due to Ford's substantial investment in research and development with respect to the '944 Patent.

171. Ford is headquartered in Dearborn, Michigan. Founded in 1903, Ford has for over a century been a leading innovator in the automotive industry, which is a backbone of the U.S. economy. For instance, between 1908 and 1913, Ford developed the world's first moving assembly line used to build automobiles; in 1932 Ford introduced the flathead V8 engine, the first commercially successful V8 engine; in 1948 Ford commercialized the F-Series line of trucks using a purpose-built truck platform which launched a line of trucks that have been the best-selling vehicles in the U.S. since 1982; and in 1996, Ford introduced the Ford Ranger Electric Vehicle, an electric-powered pick-up truck with regenerative braking, which was a forerunner to today's electric vehicles and hybrid energy systems. Exhibit 113.

172. In 2016, Ford was ninth on the Fortune list of the most successful companies in the United States. In fiscal year 2015, Ford's North American automotive sector revenues were

$91.9 billion, and constituted 65% of the company's total revenue ($140.6 billion). Exhibit 114 at 38, 40 . In fiscal year 2014, this percentage was 61% ($82.4 billion of $135.8 billion). *Id.* In fiscal year 2013, this percentage was 62% ($86.5 billion of $139.4 billion). *Id.* at 49, 52.

173. Ford invests significant sums in domestic plant and equipment relating to the Ford Domestic Industry Product and is in the process of making significant additional investments in plant and equipment in connection with the Ford Domestic Industry Product. Specifically, Ford has 29 plants across North America dedicated to, among other things, manufacturing and assembly of Ford products, as well as engineering, and research and development of such products. Ford's North American manufacturing plants, as well as its engineering, research and development plants, represent a significant portion of its worldwide facilities. Exhibit 114 at 20.

174. Ford invests heavily in domestic manufacturing facilities and the creation of U.S. jobs, and its operations have a substantial impact on the United States economy. In 2015, Ford agreed to U.S. investments worth $9 billion to create or secure 8,500 American jobs. Exhibit 115. During the past five years, Ford spent $12 billion on its United States manufacturing plants and created approximately 28,000 American jobs. Exhibit 116. Significant among these investments is Ford's expenditure in connection with U.S. plants that manufacture and assemble the Ford Domestic Industry Product which already represent enormous domestic investment by Ford in terms of plant, equipment, labor, and capital, as set forth below.

### 1.    Ford F-150

175. The Ford F-150 is the best-selling vehicle in the United States. Exhibit 117  The Ford F-150 practices the asserted '944 Patent, as set forth in the claim chart in Confidential Exhibit 112. Ford makes significant and substantial domestic investment in the research, development, and manufacture of the Ford F-150, as set forth in more detail below:

176. <u>Cleveland Engine Plant</u>. Ford manufactures the F-150 pickup truck's 3.5L EcoBoost engine at the Cleveland Engine Plant. The 3.5L EcoBoost is one of two engines manufactured at the Cleveland Engine Plant. Exhibit 118. The Cleveland Engine Plant is situated on 365 acres in Brook Park, Ohio, and comprises 1.6 million square feet of facility. Over 1,600 people are employed at this facility. Exhibit 118. In 2016, Ford announced an investment of $145 million in the Cleveland Engine Plant, which created or retained 150 jobs related to the manufacture of the 3.5 L EcoBoost engine. Exhibit 119. Ford reopened the Cleveland Engine Plant in 2009 with a $350 million investment and, by 2011, the plant was producing about 900 engines per day. Exhibit 120.

177. <u>Livonia Transmission Plant</u>. Ford manufactures its new 10-speed 10R80 Transmission for the Ford F-150 at the Livonia Transmission Plant. Exhibit 121. The 10R80 Transmission is one of two transmissions manufactured at the Livonia Transmission Plant. Exhibit 122. In 2016, Ford announced an investment of $1.6 billion in its Livonia Transmission and Ohio Assembly Plants. Exhibit 123. The Livonia Transmission Plant resides on 182 acres in Livonia, Michigan, and comprises approximately 3.3 million square feet of facility. It is the largest transmission plant in the United States, employing over 1,600 people. Exhibit 122.

178. <u>Dearborn Truck Plant</u>. The Ford F-150 is produced at the Dearborn Truck Plant in Dearborn, Michigan. Exhibit 124. The F-150 is one of 13 vehicles manufactured at the Dearborn Truck Plant. Exhibit 124. This facility comprises approximately 2.6 million square feet, is resident on 1,100 acres, and employs over 4,350 people. *Id.* In 2016, Ford committed to invest $250 million in the Dearborn Truck Plant to make the Ford F-150. Exhibit 125.

179. <u>Kansas City Assembly Plant</u>. The Ford F-150 is produced at the Kansas City Assembly Plant, in Claycomo, Missouri. Exhibit 126. The F-150 is one of two vehicles manufactured at

the Kansas City Assembly Plant. Exhibit 126. This facility rests on 1,269 acres, comprises 4.7 million square feet of space, and houses over 7,460 employees. *Id.* In 2016, Ford committed to invest $200 million in the Kansas City Assembly Plant to make the Ford F-150. Exhibit 125.

180. Discovery of Ford with respect to its domestic expenditures related to the Ford Domestic Industry Product will further substantiate that Ford makes significant and substantial domestic investments in connection with the Ford Domestic Industry Product such that a domestic industry exists in the United States with respect to the '944 Patent.

## XIV.  RELIEF REQUESTED

181. WHEREFORE, by reason of the foregoing, Complainant requests that the United States International Trade Commission:

182. Institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to the Respondents' violations of Section 337 based on the design, manufacture, importation into the United States, sale for importation into the United States, and sale within the United States after importation of articles that infringe one or more claims of one or more of the '200 Patent, '348 Patent, '509 Patent, '944 Patent, and '952 Patent;

183. Schedule and conduct an evidentiary hearing on permanent relief pursuant to 19 U.S.C. § 1337(d) and (f) of the Tariff Act of 1930, as amended; Issue a Limited Exclusion Order specifically directed to each named Respondent, pursuant to 19 U.S.C. § 1337(d), excluding from entry into the United States any articles that infringe one or more of the '200 Patent, '348 Patent, '509 Patent, '944 Patent, and '952 Patent; Issue permanent cease and desist orders pursuant to 19 U.S.C. § 1337(f) prohibiting each domestic Respondent from importing, selling, offering for sale (including via the Internet or electronic mail), advertising (including via the Internet or electronic mail), distributing, or soliciting any articles that infringe one or more claims of one or more of the '200 Patent, '348 Patent, '509 Patent, '944 Patent, and '952 Patent;

Impose a bond upon Respondents who continue to import infringing articles during the 60-day-Presidential review period per 19 U.S.C. § 1337(j); and issue such other and further relief as the Commission deems just and proper under the law, based upon the facts determined by the investigation and the authority of the Commission.

Dated:  March 21, 2017                    Respectfully submitted,

                                          James M. Wodarski
                                          Michael T. Renaud
                                          Andrew H. DeVoogd
                                          Nicholas W. Armington
                                          Serge Subach
                                          MINTZ LEVIN COHN FERRIS
                                            GLOVSKY AND POPEO P.C.
                                          Boston, MA 02111
                                          Tel: 617-542-6000
                                          Fax: 617-542-2241
                                          www.mintz.com

                                          Brad M. Scheller
                                          MINTZ LEVIN COHN FERRIS
                                            GLOVSKY AND POPEO P.C.
                                          666 Third Avenue
                                          New York, NY 10017
                                          Tel: 212-935-3000
                                          Fax: 212-983-3115
                                          www.mintz.com

                                          Aarti Shah
                                          MINTZ LEVIN COHN FERRIS
                                            GLOVSKY AND POPEO P.C.
                                          701 Pennsylvania Avenue NW
                                          Suite 900
                                          Washington, DC 20004
                                          Tel: 202-434-7300
                                          Fax: 202-434-7400
                                          www.mintz.com


                                          *Counsel for Complainant*
                                          *Intellectual Ventures II LLC*

# VERIFICATION OF COMPLAINT

I, Steven T. Skelley, declare, in accordance with 19 C.F.R. § 210.12(a)(l), as follows:

1. I am a Senior Litigation Attorney at Intellectual Ventures Management LLC and I am duly authorized to sign this Complaint;

2. I have read the Complaint and I am aware of its contents;

3. The Complaint is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the investigation or related proceeding;

4. To the best of my knowledge, information and belief founded upon reasonable inquiry, claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

5. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 20, 2017

Steven T. Skelley
Senior Litigation Attorney
Intellectual Ventures Management LLC